## ALABAMA & FLORIDA RAILROAD COMPANY *vs.* KENNEY.

[BILL FOR INJUNCTION AGAINST GOVERNMENT IMPRESSING AGENTS.]

1. *Amendment of bill, on motion to dissolve injunction in vacation.*—On motion to dissolve an injunction in vacation, all amendable defects in the bill will be considered as amended.

2. *Right of government to take private property for public use.*—The constitutional right of the general government to take private property for public use, just compensation being made, extends to all property; and neither the fact that the property is under mortgage, nor the fact that it belongs to a corporation chartered by a state law, exempts it from the operation of the principle.

APPEAL from the Chancery Court of Butler.
Heard before the Hon. N. W. COCKE.

THE bill (or petition) in this case was filed, on the 12th September, 1863, by the Alabama & Florida Railroad Company of Florida, (a corporation chartered by an act of the legislature of Florida,) and was addressed to the Hon. Jno. K. Henry, the judge of the eleventh judicial circuit. It alleged, that said railroad company had received, under the laws of Florida, a large grant of public lands, to aid in the construction of its road, " and, on account thereof, the said railroad is pledged to the State of Florida to the amount of the value of said lands "; that the company had also executed and sold, in the purchase of iron and other materials necessary for the construction and equipment of its road, a large number of bonds, which were secured by a mortgage on the road and its property, and which were held by divers creditors and purchasers; that D. H. Kenney and Charles F. M. Garnett " have seized, and intend carrying away, a large amount of rolling-stock, iron, and other property belonging and attached to said road "; that said seizure was illegal and unjust, would destroy the security of innocent bond-holders, and would " take away from the sovereign State of Florida, without

her consent, the only security she has for the advances made by her to said road." The petition concluded thus: "The premises considered, your orators pray that your Honor grant to them the writ of injunction, to be directed to the said Charles F. M. Garnett and D. H. Kenney, to restrain them, and all other persons acting through or under them, from seizing or carrying away the rolling-stock, iron, and other property belonging to said road, under such penalties as may seem proper to your Honor; and that your Honor do every other matter and thing that may be right and equitable in the premises, at the same time relieving your orators from the delay which the formal notice of this application upon the said Garnett and Kenney would require, and which the pressing nature of the case will not admit without manifest injury to the interests of your orators."

An injunction having been granted by Judge Henry, Kenney filed an answer, admitting the seizure of the rolling-stock, &c., belonging to the complainant's road, and justifying the seizure under authority conferred on Garnett and himself, as impressing agents of the Confederate States, under written orders from the secretary of war, which were made exhibits to his answer. On motion, made in vacation, the chancellor dissolved the injunction, and dismissed the bill, for want of equity; and his decree is now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellant.
ELMORE & GUNTER, contra.

A. J. WALKER, C. J.—The pleading of the complainant in this case is in the form of a petition, addressed to a circuit judge, praying alone for an injunction, and neither making any persons parties, nor seeking process as to any parties. There are, besides, greater or less defects in the form of the allegations. It is insisted, that all these imperfections were amendable, and, upon the principle in the second head-note to the case of Nelson & Hatch v. Dunn, (15 Ala. 501,) should be regarded as amended when a motion to dissolve an injunction is made in vacation. This

proposition is probably correct; and without discussing it, or giving it any careful reflection, we will consider this case as if those imperfections were amended; for such a course will not change the result.

[2.] The correctness of the chancellor's decision upon the merits is assailed, upon two, and only two grounds. Those grounds are—that the taking of private property which is under mortgage, for the use of the general government, impairs the obligations of a contract; and that the taking in this case effected the destruction of a franchise granted by a state, and was therefore invalid. These questions we shall consider upon the supposition, that the general government is under the restrictions, as to the power to impair the obligation of contracts, which the constitution makes applicable to the states; though we wish to be understood as conceding the point, only because it is not necessary to decide it, and not because we intend to announce any opinion upon it.

The provision of the constitution of the Confederate States, and of the constitution of most of the states, is the same, so far as it affects the question of the power to take private property for public use. There is a power, alike in the general government and in the states, to take private property for public use, qualified by the restriction that just compensation must be made. Under all established governments, it is a recognized principle, that all property is held subject to an inherent right in the government to appropriate it to the public use, when the public good may require it to be done. Whether this principle is deduced from the law of *eminent domain*, extended to personal property as its increasing value required, or to an original contract implied from " the mutual necessities of the individuals about to constitute a political community," it is not necessary now to speculate.—*Bloodgood v. M. & H. R. R. Co.*, 18 Wend. 9–57; *Dyer v. Tusk. Bridge Co.*, 2 Porter, 296; *West River Bridge Co. v. Dix*, 6 How. 507–516, 532. It is sufficient for the purposes of this opinion, that the principle is universally acknowledged by publicists and jurists.

All property, except that which has been inherited, is

held under contract; and its title and enjoyment are frequently, if not generally, guarantied. If, therefore, it be understood that property cannot be taken for public use, where it is derived by a contract, it would result, that the great mass of property in the country would be beyond the reach of the government, no matter how great might be the necessity. The principle, however, which subjects private property to public use, compensation being made, is said to be illimitable, and to apply to all property.—See Sedgwick on Stat. and Con. Law, 512. To take property for the public use does not, in the sense of the constitution, impair the obligation of the contract, under which the property is held. It transfers to the government the rights of property given by the contract; and compensation for the benefits of the contract is required to be made. The constitutional power of taking private property " operates upon the property, and not on the contract."

While the question has usually been decided upon the ground above stated, an eminent judge has given a reason somewhat different. In the *West River Bridge Co. v. Dix*, (6 Howard, 507–532,) Judge Daniel says : "Into all contracts, whether made between states and individuals, or between individuals only, there enter conditions, which arise not out of the literal terms of the contract itself they are superinduced by the pre-existing and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all ; are binding upon all, and need never therefore be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur. Such a condition is the right of eminent domain. This right does not operate to impair the contract affected by it, but recognizes its obligation in the fullest extent, claiming only the fulfillment of an essential and inseparable condition."

While there may be some difference in the reasons given, there is a current of authorities, holding, with unvarying

uniformity, that the taking of private property for the public use does not infringe the clause of the constitution designed to protect the obligation of contracts, and that a state may take even the franchise of a corporation chartered by itself, or any of its property, for the public use, when the charter contains no stipulation restrictive of the power.— *West River Bridge Co. v. Dix, supra,* and the cases collected by Judge Woodbury in his opinion, p. 543 ; *R. F. & P. R. Co. v. Louisa R. Co.,* 13 How. 82 ; *Charles River Bridge v. Warren Bridge,* 11 Peters, 420 ; *Crosly v. Hanover,* 36 N. H. 404 ; *Northern R. R. v. C. & C. R. R. Co.,* 7 Foster, 183 ; *Enfield T. B. Co. v. H. & N. R. R. Co.,* 17 N. H. 454 ; *Backus v. Lebanon,* 11 N. H. 19 ; *Brewster v. Hough,* 10 N. H. 138 ; *Piscataqua Br. v. N. H. Bridge,* 7 N. H. 36, 68 ; *Red River Br. Co. v. M. & A. of Clarksville,* 1 Sneed, 176 ; *Bailey v. Millenberger,* 31 Penn. St. 37 ; *N. Penn. R. R. Co. v. Davis,* 26 Penn. St. 238 ; *James River & Kan. Co. v. Thompson,* 3 Grat. 270 ; *White River T. Co. v. V. C. R. R. Co.,* 21 Ver. 590 ; *Board &c., v. Ohio & N. J. R. Co.,* 14 Ill. 314 ; *U. S. v. R. Br. Co.,* 6 McL. 517 ; *Young v. McKenzie, Harrison & Co.,* 3 Kelly, 31 ; *Boston & Lowell Cor. v. S. & L. R. Co.,* 2 Gray, 1 ; *Miller v. N. Y. & E. R. Co.,* 21 Barb. 513 ; *Dyer v. Tusk. Br. Co.,* 2 Porter, 296 ; Sedgwick on Stat. & Con. Law, 664.

Of the several cases above cited, we remark only upon the facts of one—*North Penn. R. R. Co. v. Davis.* In that case, the persons in possession of the land sought to be condemned held under a lease, with a covenant on the part of the lessors to renew the lease for three years at a specified price. It was contended, that the contract for the renewal of the lease would be impaired by appropriating the property to public use, because its performance would be rendered impossible. This argument was overruled, and the appropriation sustained ; the court holding, that the lessee was entitled to compensation for the loss of the benefit of the covenant for renewal. The principle settled by these cases is, that all property is liable to be taken for public use. Mortgaged property cannot constitute an exception to the rule. There may be more difficulty in

ascertaining the damages where such property is taken; but there can be no variation in the principle.

While it is well settled by the cases to which we have referred above, that a franchise is property, and that it, as well as the property by means of which it exists, may be taken for public use; there is no case which we have found, holding that it may be taken by the general government, when it exists by virtue of a state charter. What would be the law in such a case, we need not decide. The government did not, in this case, take the franchise, nor property indispensable to the existence of the franchise, or to the exercise of the privileges bestowed by the act of incorporation.

The pleadings raise no question as to the making of compensation, or as to the regularity of the proceedings for condemnation, or for the ascertainment of the damages. So far as the bill discloses, there is no ground of complaint, or dissatisfaction, on those points, in any quarter.

The decree of the chancellor is affirmed.