# Chambers *et al. v.* The Alabama Iron Company.

*Bill in Equity for Specific Performance of Mining Contract, and to Enjoin Violations of it.*

| | |
|---|---|
| 37 | 353 |
| 96 | 231 |
| 96 | 525 |
| 97 | 489 |
| 67 | 353 |
| 101 | 558 |
| 67 | 353 |
| 106 | 548 |
| 67 | 353 |
| 121 | 571 |
| 67 | 353 |
| 133 | 299 |
| 133 | 301 |
| 133 | 424 |
| 67 | 353 |
| 134 | 229 |

1.  *Injunction; when awarded as ancillary to a bill for specific performance.* Whenever a *prima facie* case for specific performance is shown, and the injury apprehended from breaches of the contract is of a nature not capable of adequate compensation in damages at law, an injunction may be awarded as ancillary to the bill.

2.  *Same ; motion to dissolve sustained for want of equity in bill, although submitted in vacation.*—A motion to dissolve an injunction should be sustained if the bill is without equity, although such motion is submitted in vacation.

3.  *Same; what considered on motion to dissolve* —On motion to dissolve an injunction after answer filed, for want of equity in the bill, the facts stated, and not the manner in which they are stated, nor the form of the bill, nor the specific prayer for relief, should be considered ; and all amendable defects should be treated as amended.

4.  *Specific performance of contract, relating to lands, by party who did not sign it.*—An agreement for the sale of lands, or any interest therein, which must be in writing, and subscribed by the party to be charged thereby, may be specifically enforced by a party who did not sign it, since by resorting to equity for this purpose, he adopts the agreement and renders it obligatory on him.

5.  *Same ; when is matter of right.*—When a contract respecting lands, or any interest therein, is in writing, is certain and fair, in all its parts, founded on an adequate consideration, and capable of being specifically performed, specific performance is a matter of right, and it is as much a matter of course for a court of equity to decree it, as for a court of law to award damages for its breach, and it will be decreed, not only between the original parties, but also between parties claiming under them, unless some controlling equity intervenes which renders it improper.

6.  *Injunctions to restrain violations of contracts ; upon what based.*—Injunctions to restrain violations of contracts, are based upon the necessity of protecting legal rights when the breaches are of such a nature that damages at law furnish no adequate compensation, and this depends largely on the subject matter of the contract, its purposes, and objects.

7.  *Mining property ; injunction restraining trespassers on, courts liberal in granting.*—Courts of equity, in the exercise of jurisdiction to restrain trespasses on lands, or stay waste, are more liberal, and exercise a greater latitude in protecting mining property, than in cases of other injuries, since the injury, if continuous is not temporary, but is permanent, ruinous, and not capable of adequate compensation in damages at law.

8.  *Injunctions ; motions to dissolve in cases of trespass to lands, Chancellor has greater discretion than in other cases.*—On motions to dissolve injunctions on the denials contained in the answer, the rule that if the equity of the bill is met and controverted in the answer, the injunction should be dissolved, is more flexible, and the Chancellor has a wider discretion, when the bill seeks to restrain trespasses, or stay waste on mining lands, than to stay proceedings at law ; and if irreparable damage might result from a dissolution, and the complainant would be entitled to relief on the final hearing, the injunction may be retained.

APPEAL from Talladega Chancery Court.

Heard before Hon. N. SMITH GRAHAM.

This was a bill in chancery, filed May 31st, 1880, by the Alabama Iron Company against Henry Heine and George W. Chambers. After the answers of the respondents to the bill were filed, they moved to dissolve an injunction which had been granted on the filing of the bill, and this motion was submitted in vacation for a decree. The Chancellor refused the motion, and retained the injunction, and his decree is assigned as error. The allegations of the bill, and the denials of the answers, so far as they are necessary to a proper understanding of the points decided, are stated in the opinion of the court.

BRADFORD & BISHOP, for appellants.—The answers of the respondents denied the material averments of the bill, and the injunction should have been dissolved when they came in.—1 Brick. Dig. 677, § 543. The contract set up in the bill was for the sale of an interest in land, and should have been signed by the Alabama Iron Company, the party to be charged. Without this signature it was void under the statute of frauds.—Code, § 2121 ; 8 Ala. 546. Then, again, there were mutual covenants in the agreement, and it was an unexecuted contract. Injunctions ought not to be granted except on unquestioned evidence of complainants' title, (High on Injunc. 421-463) ; nor when it is alleged that defendant is in possession under an adverse claim, (High on Injunc. 421 ;) nor when the bill fails to aver that the injury charged goes to the destruction of the estate of inheritance, or is productive of irreparable mischief to the property, and fails to state the facts constituting the irreparable mischief.—High on Injunctions, 421. The bill shows a purchase under a parol agreement, and fails to aver a payment of all or a part of the purchase-money.—Code, § 2121. The motion to dissolve the injunction should have been granted.

BOWDON & KNOX, for appellee.—The Alabama Iron Company, although it did not sign the contract, was as much bound by it as were the respondents to the bill, if it accepted it. *Phelps v. Townsend*, 8 Pick. 392 ; *Wetumpka R. R. Co. v. Hill*, 7 Ala. 772 ; 1 Parsons on Con. 449 ; 11 Iowa, 161 ; 24 *Ib.* 387. The statute of frauds has no application to the case, for the complainant, by filing the bill, has made the remedy mutual. Browne on Stat. Frauds, 366 ; *Shirly v. Shirly*, 7 Black (Ind.) 452 ; *Ballard v. Walker*, 3 John. Cases, 60 ; 10 Watts, 387. The bill shows that the respondents were at work continuously, digging iron ore, and this gave the complainant a right

[Chambers et al. v. Alabama Iron Co.]

to an injunction. Where a mere trespasser digs into and works a mine to the injury of the owner an injunction will be granted, because it operates a permanent injury to the property as a mine.—2 Story's Equity Jur. 928, 929 ; Livingston v. Livingston, 6 John. Ch. 497 ; Hanson v. Gardner, 7 Ves. 305 ; Thomas v. Jones, 32 Ala. 725 ; Wright v. Moore, 38 Ala. 599. "That is not an unbending rule which requires an injunction to be dissolved when the answer denies the equity of the bill, for the Chancellor may retain it when the facts disclose a good reason for doing so."—Miller v. Bates, 35 Ala. 580. In this case the Chancellor denied the motion to dissolve, and unless this court can see clearly that he erred, it should not disturb his decree.

BRICKELL, C. J.—We do not concur in the view of counsel for the appellants that the equity of the bill is addressed to the jurisdiction of the court to stay waste, or to restrain trespasses on land, or for the prevention of irreparable mischief. It is rather a bill for the specific performance of the contract entered into by Heine with the appellee, and to restrain violations thereof for which the law furnishes no adequate remedy. The injunction is merely ancillary, and is necessary to the main design and full relief, if there is a contract the court will enforce specifically. It is warranted, whenever a *prima facie* case for specific performance is shown, and the injury apprehended from breaches of the contract, are of a nature not capable of adequate compensation in damages at law.—High. on Inj. § 695 ; 1 Edin on Inj. 45-49.

The defendants having answered, submitted to the Chancellor in vacation, a motion to dissolve the injunction, resting the motion upon two grounds, as we understand : *First*, That the bill is without equity ; and *Second*, That there is in the answers a full, complete denial of all the facts upon which depends whatever of equity may be found in it. The first point of consideration is, therefore, whether upon the facts stated in the bill, not looking to, and irrespective of the answer and its denials, a case of equitable jurisdiction is presented? For although the motion to dissolve is submitted in vacation, it should be sustained if the bill is wanting in equity.—Nelson v. Dunn, 15 Ala. 501 ; Cone v. Webb, 22 Ala. 583. It is the facts stated which should be considered, not the manner of stating them, nor the form of the bill, nor the specific prayers for relief. Whatever of amendable defects may be apparent should, *pro hac vice*, be regarded as amended. Nelson v. Dunn, supra ; A. & F. R. R. Co. v. Kenney, 39 Ala. 307.

In substance, the bill avers that Heine was seized in fee

[Chambers et al. v. Alabama Iron Co.]

of a particular tract of land, upon which there was a quantity of iron ore. The appellee is a private corporation, organized under the laws of this State, having here its principal place of business, and engaged in the manufacture of iron. In the course of its business, and in the exercise of its powers, on the 1st day of October, 1879, through its president and superintendent, the appellee and Heine, made an agreement in writing, subscribed by Heine and his wife, a copy of which is exhibited, whereby he made sale to the appellee of all the merchantable iron ore on said tract of land, at ten cents per ton of two thousand two hundred and sixty-eight pounds, payable on the 15th day of each month, for all ore dug and delivered the preceding month. The agreement further stipulating that the appellee should dig and mine the ore, in such quantities as it might wish and need, and should have the use of water from a well on the land, the right to build cabins thereon for its laborers, who were employed in mining, and the right to use and occupy such cabins for that purpose, and a right of way to haul the ore to the Selma, Rome & Dalton Railroad. On the 28th November, 1879, under the agreement, the appellee having made a contract with one Snow, to mine, remove, and ship the ore to a furnace the appellee was operating, with the knowledge and consent of Heine, entered upon and took possession of the land. Snow opened a mine on the land, and removed and shipped the ore therefrom to the appellee until the 5th April, 1880, when the contract with him was rescinded, and he surrendered possession to the appellee; and one Riggs, as the agent of appellee, went into possession for the purpose of mining, removing, and shipping the ore to the furnace. On the 3d of May, 1880, Chambers, the appellant, claiming the land under some agreement with Heine, the nature of which was unknown to the appellee, placed laborers at work in the mine the appellee had caused to be opened, compelling its agent and laborers to leave and abandon the same; and with a large force of laborers, he is from day to day, digging and removing the ore, converting the same to his own use. Whatever of claim Chambers may make to the land, it is alleged, was acquired with full notice of the claim and right of the appellee. The agreement is subscribed by Heine and his wife, and attested by witnesses, but not subscribed by any officer or agent of the appellee.

The first proposition made in opposition to the bill, is, that the agreement is not complete; that it rested in treaty or negotiation, until it was completed by subscription by some officer or agent of the appellee, having authority to bind it. The subject matter of the agreement is an interest in lands,

and it must, under the statute of frauds, be manifested in writing, to confer rights.—*Riddle v. Brown*, 20 Ala. 412. The several sections of the English statute of frauds, relating to the transfer of estates or interests in lands, are compressed into a single clause of our statute, which reads: "Every contract for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase-money, or a portion thereof be paid, and the purchaser put in possession by the seller," is void, unless the agreement, or some note or memorandum thereof, is in writing, subscribed by the party to be charged, or some other person by him thereunto lawfully authorized in writing. There are changes in the phraseology of the statute, and the introduction of new terms which require a different construction from that given the former statute of force in this State. There are also cases falling within the statute, not within that statute. And the part performance, the letting into possession, the purchase-money, or a part being paid, is an exception from the statute, not as formerly, merely ground in equity for withdrawing the case from its operation. But in respect to the signing, or subscription, the words of the present, and of the former statute, in substance, are the words of the English statute; the one employing the word *signed*, the other the word *subscribed*. The requisition of the English statute was that the writing should be *signed* by the party making or creating the estate or interest. The requisition of the present statute is, that it must be *subscribed by the party to be charged therewith*. Whatever of doubt could be entertained, whether an agreement or memorandum signed only by one party, could be enforced by the other, is dissipated by an almost unbroken current of authority.—*Seton v. Slade*, 7 Vesey, 265; (S. C. 3 Lead. Cases in Eq.); Browne on Stat. Frauds, § 366; 1 Story's Eq. § 736a (12th Ed.). All the purposes of the statute are satisfied—all just apprehension that the agreement will not be mutual in operation, is removed, when, as in the present case, the party not subscribing resorts to equity for a specific performance, thereby adopting the agreement, and rendering it obligatory upon him. Beside, when a party accepts and acts upon an agreement of this character, conferring benefits upon him, he is bound, though he may not sign or subscribe it, to the performance of the duties and obligations it imposes; and while he may claim specific performance from the party signing, the converse right exists against him, and from him specific performance may be compelled.—*Randall v. Tatham*, 36 Conn. 48. The agreement was complete—it

did not rest in treaty or negotiation, after its acceptance by the appellee.

In all its terms, so far as is apparent upon its face, or as is shown by the allegations of the bill, the agreement is certain, fair, and just. There is nothing uncertain or indefinite in the subject matter, or in the consideration, or in the rights or obligations of the parties. Nor is there any indication that the appellee has disregarded its obligations, or is incapable of performing them. Nor is there any fact or circumstance apparent, indicative of unfairness in obtaining the contract, or of hardship in the obligations imposed on Heine. It is said the specific performance of contracts is not a matter of unqualified right in either party, but that it rests in the sound and reasonable discretion of the court, in view of the particular circumstances of the case presented.—1 Story's Eq. § 742. But when a contract respecting lands, or any interest therein, is in writing, certain and fair in all its parts, founded on an adequate consideration, capable of being performed, specific performance becomes a matter of right; and it is as much a matter of course for a court of equity to decree it, as for a court of law to award damages for its breach. 1 Story Eq. § 751. And it will be decreed not only as between the immediate parties, but as between and against parties claiming under them, unless there is some controlling, intervening equity, which would render it improper. —*Brewer v. Brewer*, 19 Ala. 481. Looking to the contract and the averments of the bill, there can be found no reason for withholding specific performance as against Heine. The sanctity of contracts, which the law and justice require should be kept inviolate, and the consummation of the purposes of parties in entering into them, demand it. With notice of the contract, of the right it conferred on the appellee, Chambers acquired whatever of claim he may have to the lands, and can have consequently no equity to protection against specific performance, not resting in Heine.

The bill is not wanting in equity, as a bill for the specific performance of the contract, and the only other question for consideration, is whether upon its allegations, violations of the contract should be restrained by injunction. In the consideration of this question, we put aside the averment of Chambers' insolvency, because it may be regarded as denied by the answers; and for the better reason, that there is no averment of the insolvency of Heine, who would be answerable at law in damages for a violation of the contract, because of all the acts and doings charged upon Chambers. Insolvency is often a material fact in determining whether remedies at law shall be exhausted, or in determining whether such

[Chambers et al. v. Alabama Iron Co.]

remedies are adequate for the injury to be relieved against in equity.

It may not, however, be true that the insolvency of one of several wrong-doers lessens the adequacy of remedies at law, or, in proper cases, relieves from the necessity of resorting to them. The necessities of this case are met, if upon well established principles, a court of equity should by injunction prevent the violations of this contract which are being perpetrated, whether the parties complained of are solvent or insolvent.

Injunctions to restrain violations of contracts are based upon the necessity of protecting legal rights, when the breaches are of such a nature that damages at law furnish no adequate compensation. Whether damages will afford adequate compensation depends of necessity largely upon the subject matter of the contract, its purposes and objects. In the exercise of its jurisdiction to restrain trespasses upon lands, or to stay waste, courts of equity are more liberal, exercise a greater latitude, in interfering for the protection of mining property, and interests therein, than in cases of other injuries.—High on Inj. § 468; 2 Story Eq. § 928–9. The injury, if continuous, is not regarded as a mere fugitive, temporary trespass, capable of compensation in damages at law, but it is permanent, ruinous and irreparable, impairing the present and future enjoyment of the property, and if courts of equity refused to interfere for its prevention, there would often be an absolute failure of justice. The same principle must be applied in interfering to restrain the violations of contracts, having ores and minerals for their subject matter, especially when the contract confers a clear fixed right to take and remove them, for an indefinite period of time. There can be no estimate of the damages which would result from the repeated violations of such a contract, and the litigation springing from them would be interminable. The bill disclosing a fair and just contract of which specific performance should be decreed, its nature and subject matter, and the inadequacy of legal remedies to afford just and fair compensation for its violations, the interference by injunction was a necessity to prevent a failure of justice.

It is unnecessary to scan the answers closely. In the view we have taken of the case, whatever could be said of them, if the bill was addressed to the jurisdiction of the court for the prevention of waste, or of trespass, it cannot be said they contain clear, positive denials of the material facts upon which the right of the appellee to relief must depend ultimately. Beside, the rule that injunctions shall be dissolved, when the equity of the bill is met and controverted by the

answer, is more flexible, yielding more to the particular circumstances, in cases of this character, than in cases of injunctions to stay proceedings at law. The Chancellor has a large discretion over the subject, and though the answers negative the equity of the bill, may retain the injunction, when, if on a final hearing the bill should be sustained, irreparable injury would be the consequence of a dissolution. *Bibb v. Shackelford,* 38 Ala. 611.

We find no error in the record, and the decree is affirmed.