# Winston Jones & Co. *v.* Peebles.

*Bill in Equity to compel Specific Performance of a Contract.*

1. *Contract by administrator; when invalid; specific performance.* One P. died intestate leaving his estate incumbered with a mortgage. Immediately after their appointment, the adminis-

[Winston Jones & Co. v. Peebles.]

trators of the estate of said P. entered into a contract with the mortgagee for the purpose and intention of paying off and discharging the said mortgage indebtedness. The contract so entered into, after specifying the indebtedness of the estate to the mortgagee in a large amount and that it was evidenced by promissory notes and secured by a mortgage upon the lands of the estate, and further reciting that the mortgagee had agreed to extend the payment, stipulated on the part of the mortgagors, that they would, for a period of seven years, up to the time of the extension agreed to by the mortgagee, turn over to and pay unto the mortgagee all the rents, incomes and profits from the intestate's estate, which were to be used to pay and satisfy first the advances agreed to be made by the mortgagee from year to year during the period stipulated, and then to be used towards the payment and satisfaction of the mortgage debt due by the intestate to the mortgagee. *Held*: That the administrators were without authority to enter into such a contract; that said contract was not binding upon the estate of the intestate, was invalid and could not be specifically enforced against the administrators in their representative capacity.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. THOS. H. SMITH.

The bill in this case was filed by the appellants, Winston Jones & Co., a firm composed of W. Jones and W. H. Jones, against the appellees, Mary E. Peebles and Dr. J. Moody, as administratrix and administrator of the estate of E. D. Peebles, deceased, and against Mrs. M. E. Peebles and Dr. J. Moody in their individual capacities. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

The prayer of the bill was as follows: "The premises considered, the complainants do now ask and pray that a preliminary injunction and restraining order be now issued to defendants and each of them and all and every one acting or pretending to act as agent or otherwise restraining them from withholding said cotton from complainants; and enjoining and restraining them and each of them and each and every person acting or pretending to act for them as agent or otherwise, from selling or disposing of said cotton otherwise than in accordance with the terms and provisions of said contract with com-

plainants, and enjoining them from committing or doing any other act in violation of their said contract without the consent of complainants, and commanding defendants and each of them to specifically perform their said contract and to ship said cotton to complainants in accordance with their said contract; and that on final hearing a decree be entered making said preliminary injunction final and perpetual. And they also ask for all such further orders, processes or decrees as the nature of the case may at any time require in its further progress."

The contract which was sought to be specifically enforced was in words and figures as follows: "State of Alabama, County of Pickens. Agreement entered into by Winston Jones & Co. and Dr. J. Moody, Admr., and Mrs. Mary E. Peebles as administrix of Emory B. Peebles, deceased, this 13th day of January, 1896, witnesseth, that whereas the estate of the said E. B. Peebles is indebted to Winston Jones & Co. in the sum of twenty-seven thousand one hundred and twenty-five 29-100 dollars as evidenced by his several promissory notes and secured by mortgage on the 10th day of July, 1895, and of record in the probate office of said county with conditions therein set forth; and whereas Winston Jones & Co. are willing to aid the said administrators in consummating the terms and provisions of said mortgage, and in the event the estate is not able to meet the payments as they become due, the said Winston Jones & Co. agree to extend the unpaid amounts under said mortgage and any balance so unpaid to be carried over for the next year, and so on as to such extensions from year to year until January 1st, 1903, Winston Jones & Co. agree further to advance to the administrators of said estate of Peebles a reasonable amount of cash and supplies, say three thousand dollars per year, during this time to enable them to carry on the business, the said Winston Jones & Co. to have a mortgage on all the crops of cotton, cotton seed and corn raised by said administrators on all the lands owned by the estate, and also on the lands owned by Mrs. Mamie E. Peebles deeded to her by E. B. Peebles during said seven years, all the cotton to be shipped to

said Winston Jones & Co., Mobile, for sale by them in the usual way, proceeds to be applied to the payment, first of the new advance to make the crops, and any surplus to be applied to the old mortgage aforesaid. Now, in consideration of the foregoing, and it being to the interest of said estate, as well as Mrs. Mamie E. Peebles, the said Mrs. Mamie E. Peebles agrees to turn over to the administrators of said estate of E. B. Peebles the use and control of all the property, real and personal, deeded to her by E. B. Peebles on the 6th day of December, 1895, and of record in the probate office of said county, free of rents until the first of January, 1903, and all said rents, incomes and profits to be used by said administrators to pay and satisfy the said mortgage debt of E. B. Peebles to Winston Jones & Co., all taxes on the property owned by Mrs. Peebles that was deeded to her by E. B. Peebles to be paid out of the income of all the estate property until the said debt to Winston Jones & Co. is fully paid. In the event Dr. Moody should resign, or in any manner cease to manage the said business, then it is agreed that Mrs. Peebles and Winston Jones & Co. shall select a suitable person to conduct the business in his stead to a final consummation as aforesaid, or the representatives of Mrs. Peebles and of Winston Jones & Co. may so act in such selection. Witness our hands this the day and year first above written. Executed in duplicate. [Signed] Winston Jones & Co., J. Moody, Mamie E. Peebles."

On the final submission of the cause on the pleadings and proof, there was a decree rendered, the substance of which is sufficiently stated in the opinion. From this decree the complainants appeal, and assign the rendition thereof as error.

There were also cross assignments of error made by the appellees, but the record does not show that any cross-appeal was taken, nor is there shown any agreement between the parties for the appellees to make cross assignments of error, nor is there any joinder by the appellants in the cross assignments of error.

A. Bogle and Pettus & Pettus, for appellants.—The jurisdiction of a court of equity to grant the relief

of specific performance of contracts is old and well settled. It is founded on the just principle that men should be required to act in good faith towards each other in their business transactions; and that they should not be permitted to violate contracts solemnly entered into, when it would be to the detriment of the other contracting parties for them to do so. When a proper case is presented for its exercise the party injuriously affected by a breach of the contract, is entitled to the relief as a matter of right; as much so as they would be entitled to a judgment in an action at law for damages for the breach.—*Bogan v. Daughdrill,* 51 Ala. 314; *Chambers v. Ala. Iron Co.,* 67 Ala. 358; 3 Pom. Eq. Juris., § 1404; 1 Story's Eq. Juris., §§ 715, 717, 718, 742.

It will be granted in every case where an action at law for damages would not afford complete relief, (*Kirksey v. Fisk,* 27 Ala. 386,) or where compensation in damages for the breach would not furnish a complete and satisfactory remedy, (*Johnson · v. Brooks,* 93 N. Y. 338), or where the remedy at law is for any reason doubtful uncertain or inadequate, (*Casey v. Holmes,* 10 Ala. 785), or where an action at law in damages for a breach would not put the parties in a situation as beneficial to them as if the agreement had been specifically performed, (1 Story's Eq. Juris., § 716, note 2, page 703; 3 Pom. Eq. Juris., page 441, note 2), or where the nature of the case is such that a performance in specie alone will answer the ends of justice. (*Cathcart v. Robinson,* 5 Peters 264), or where there are special circumstances that operated as an inducement to the making of the contract which a court of law could not consider in an action in damages for a breach. *Kirksey v. Fike,* 27 Ala. 386; *Johnson v. Brooks,* 93 N. Y. 338; 3 Pom. Eq. Juris., 444.

This was a contract which Jones & Co. would have had a right to enforce against Peebles. It was fair and just and conferred advantages and benefits upon Jones & Co. for which they could have no adequate remedy by an action in damages at law for a breach, and for which they would have been entitled to a de-

cree for specific performance against E. B. Peebles in case he failed to comply with its terms. It was, therefore, binding upon his administrators.—*Hayes v. Hall,* 4 Port. 385; *Brewer v. Brewer & Logan,* 19 Ala. 489; *Chambers v. Ala. Iron Co.,* 67 Ala. 358; *Strange v. Watson,* 11 Ala. 324; *Jenkins v. Harrison,* 66 Ala. 345; *Meyer v. Mitchell,* 75 Ala. 475.

The administrators did nothing under the contract, and would not be doing anything in performing it which they were not authorized under the laws of Alabama. The only thing the administrators did under the contract, that in any way affected the rights of the estate of E. B. Peebles, was to rent out the lands and mules belonging to the estate. The testimony is clear and positive that the lands and mules were all rented out to tenants. This the administrators had a perfect right to do under the statutes of Alabama, without any order of court.—Code of 1886, § 2102. The power to rent involves the duty to do so, whenever it becomes apparent to the administrators that it will be necessary in order to pay the debts of the estate.—*Clark v. Knox,* 70 Ala. 622.

Where administrators come into possession of an estate encumbered with a mortgage, it is their duty to rent the lands and apply the proceeds to the payment of the mortgage, and it is not necessary to obtain an order of court to do so.—*Mayer & Co. v. Taylor & Co.,* 69 Ala. 405; *Patapsco Guano Co. v. Ballard,* 107 Ala. 716.

WILLETT & WILLETT, *contra.*—The contract of January 13, 1896, entered into by and between the administrators of E. B. Peebles and Winston Jones & Co., is an illegal contract, as the administrators had no authority to execute the same. They should have gotten an order of the court for its execution, and having failed to do this, it is unwarranted in law and, therefore, illegal and courts of equity will not enforce specifically an illegal contract.—Waterman on Specific Performances; 2 Brickell's Dig., 692.

Where an administrator transferred a certain portion of the undivided assets of an estate in compromise of a pending suit the court refused specific performance,

as the law prohibited private sales by executors and administrators, and held the contract was violative of law and incapable of being enforced.—*Bogan v. Campbell*, 30 Ala. 276.

The doctrine applying in such cases is *in pari delicto potior est conditio possidentis.*—*Bogan v. Campbell, supra; Brantley v. West,* 27 Ala. 542

A void contract will not be specifically enforced. *Deal v. Hair,* 18 Ala. 748; *Evans v. Kittrell,* 33 Ala. 447; *Smith v. Johnson,* 37 Ala. 633.

Specific performance is not a matter of right, and courts of equity are invested with a sound discretion to grant or withhold relief as may seem just and equitable. If unconscionable and unjust they will deny relief. *Irwin v. Bailey,* 72 Ala. 467; *Moon v. Crowder,* 72 Ala. 79; *Derrick v. Monette,* 73 Ala. 75.

The jurisdiction is carefully and cautiously exercised, and specific performance will not be decreed unless it is strictly equitable in enforcing the contract the parties made.—*Bogan v. Daughdrill,* 51 Ala. 312; *Ellet v. Wade,* 47 Ala. 456; *Hurst v. Thompson,* 73 Ala. 158.

If the contract is founded on fraud, imposition, mistake or grave misapprehension it will not be enforced; nor when from a change of circumstances or otherwise it would be unconscientious.—*Ellet v. Wade,* 47 Ala. 456; *Daniel v. Collins,* 57 Ala. 625.

DOWDELL, J.—The appellants filed their bill in the chancery court of Pickens county for the purpose of enforcing the specific performance of a contract made and entered into by them under the firm name of Winston Jones & Co., on the 13th day of January, 1896, with the appellees, Mamie E. Peebles and Dr. J. Moody as the administrators of the estate of E. B. Peebles, deceased. In addition to the special prayer, the bill contained the general prayer for relief. Upon the final hearing on the pleadings and proof, the chancellor denied the relief sought against the respondents by the bill in their representative character, holding that they as administrators were without authority and powerless to bind

the assets of the estate of their intestate by entering into said contract, but under the general prayer, granted only partial relief against the respondent, M. E. Peebles. From this decree the present appeal is prosecuted. While error is also complained of in the decree in the directions for the stating of the account between the complainants and respondents under the order of reference for that purpose, the main question involved in the controversy on this appeal is that of the authority and power of the administrators, as such, to enter into the contract sought to be specifically enforced, and its consequent validity.

Pertinent to this question, the bill and the facts in the case show that E. B. Peebles, respondents' intestate, was the owner of a large quantity of land in Pickens county, and during his life, for many years, and up to the time of his death, farmed extensively, and also merchandised, during which time he had business transactions with the complainants, Winston Jones & Co., who did a commission business in the city of Mobile, and who were the said E. B. Peebles' commission merchants. In March, 1895, the said E. B. Peebles and Winston Jones & Co. had a settlement of accounts between said Peebles and Jones & Co., in which it was ascertained that the said Peebles was largely indebted to the said Jones & Co. A written agreement was then entered into between them, in which it was agreed that the said Peebles would upon certain conditions stated in said agreement execute a mortgage on a large amount of land and personal property, which he then owned, to said Winston Jones & Co. to secure his indebtedness to them. Pursuant to said agreement, all the terms and conditions of which having been complied with by the said Winston Jones & Co., the said E. B. Peebles did on the 10th day of July, 1895, make and execute a mortgage to the said Winston Jones & Co., a copy of which is made an exhibit to the complainants' bill. In December, 1895, the said E. B. Peebles died, leaving his estate encumbered with said mortgage. In January, 1896, the respondents Dr. J. Moody and Mamie E. Peebles took letters of administration on the estate of the said E. B. Peebles, deceased, and immediately qualified and en-

tered upon the discharge of their duties as such administrators, and on the 13th day of January made with Winston Jones & Co. the contract in question. The facts show that it was the purpose and intention of the parties, in entering into said contract, to pay off and discharge said mortgage indebtedness from E. B. Peebles to Winston Jones & Co., with the rents, income and profits from the mortgaged property, and thereby save to the estate of the said E. B. Peebles, deceased, and to his heirs, the land and other property covered by the mortgage (and to that end and for that purpose, the said Mamie E. Peebles pledging the rents and income from her individual estate). The facts show that the contract was just and fair and reasonable in its terms. In accordance with its provisions, the cotton grown and raised on the lands for the year 1896, was shipped to Winston Jones & Co. at Mobile, and by them sold and the proceeds applied under the terms of the contract, and the contract otherwise, in all of its terms, was carried out by all of the parties for the year 1896. The facts further show that Winston Jones & Co. continued for the next year, 1897, to carry out said contract in good faith, and have all along performed their part, until they were prevented from further performance by the respondents; that the respondents received all of the benefits under the provisions of said contract in growing and raising the crop of 1897 in the way of advances in money and supplies to the respondents and their tenants on said lands, made by said Jones & Co. in accordance with the terms of the contract, but that the said Mamie E. Peebles, respondent, after said crop of 1897 had been so grown and gathered, refused to ship said crop to said Jones & Co. according to the contract, and wholly refuses to further carry out and perform said contract. The facts further show that under the agreement of settlement of March, 1895, between the said E. B. Peebles and Winston Jones & Co. and under the mortgage of July 10, 1895, executed pursuant to said agreement, as well as under the contract of January 13, 1896, entered into between the complainants and respondents for the purpose of paying off and discharging said mortgage in-

debtedness and thereby preserving the lands under said mortgage to the estate of their intestate, certain benefits were to accrue, and would accrue to Winston Jones & Co. in the performance of said contract, which operated as an inducement for entering into the same, and for such as no adequate and just compensation could be had in an action at law, in the assessment of damages, on a breach of the contract.

With this preliminary statement of the facts as shown in the record we proceed to the discussion of the propositions of law applicable thereto and which we think control in the case.

The doctrine of equity jurisdiction to compel the specific performance of contracts is well settled. It rests upon the just principle that men should be required to act in good faith towards each other in their business transactions; and that they should not be permitted to violate solemn contracts entered into, when it would be to the detriment of the other contracting parties for them to do so. When a proper case is presented for its exercise the party injuriously affected by a breach of the contract, is entitled to the relief as a matter of right; as much so as they would be entitled to a judgment for damages in an action at law for the breach. *Chambers v. Ala. Iron Co.*, 67 Ala. 358; *Bogan v. Daughdrill*, 51 Ala. 314; 1 Story Eq. Jur., §§ 715-717-717a, 742; 3 Pom. Eq. Jur., § 1404. What will constitute a proper case for the exercise of equity jurisdiction for enforcing the specific performance of a contract, in general, is determinable upon the inadequacy of any remedy in a court of law to fully meet the ends of justice. In the following cases it seems to be clear upon authority, that the jurisdiction will obtain and relief be granted, viz.: Where the remedy at law is for any reason doubtful, uncertain, or inadequate.—*Casey v. Holmes et al.*, 10 Ala. 785. Or, where an action at law in damages for a breach would not put the parties in a situation as beneficial to them as if the agreement had been specifically performed.—1 Story Eq. Jur., §§ 716 *et seq.*; 3 Pom. Eq. Jur., p. 441, note 2. Or, where the nature of the case is such that a performance alone will answer the ends of justice.—*Cathcart v. Robinson*,

5 Peters, 264. Or, where there are special circumstances that operated as an inducement to the making of the contract which a court of law could not consider in an action in damages for a breach; and in every case where an action at law for damages would not afford complete relief.—*Kirksey v. Fike*, 27 Ala. 386; *Johnson v. Brooks*, 93 N. Y. 338; 3 Pom. Eq. Jur., p. 444.

The facts and circumstances in the present case as shown by the record, bring the case fairly within the principles above stated. They show that the complainants were commission merchants and cotton factors in the city of Mobile; that their business and profits in this particular consisted in advancing money and supplies to merchants and farmers, to enable them to grow crops and buy cotton, in order that they, Jones & Co., might secure the handling and sale thereof; and for which advances and supplies and sales of cotton they received a commission from the parties dealing with them. The facts also show that Jones & Co. were largely interested as owners in the steamboat companies on the Bigbee river, by which this particular cotton was shipped to Mobile, Ala., and on account of which they received a profit from freight charged for shipping said cotton. They were also interested in the compress and warehouses in Mobile, by which the cotton would be handled, and in the insurance companies by which the cotton would be insured, sharing in the profits arising from these sources. All of these profits being of such character that they could not be considered in the measure of damages for a breach of the contract in an action at law, yet were advantages accruing to Jones & Co. from the contract which induced them to enter into it. Apart from the consideration of the question of the power of the respondents in their representative character to make the contract, the contract in its terms and under the peculiar circumstances of the case, is such as clearly calls for the exercise of the jurisdiction and power of a court of equity for its specific performance.

Did the administrators exceed their powers and duties, as such, under the law, in entering into the contract?

Recurring to the mortgage of E. B. Peebles, deceased, to Winston Jones & Co. of July 10, 1895, and for the purpose of paying off and discharging which, the contract of January 13, 1896, was entered into by the respondents, it will be seen that said mortgage contained a contract out of which other and future advantages were to accrue to both Jones & Co. and E. B. Peebles. After describing the property covered by the mortgage, and providing the manner of sale in case of default, the instrument continues as follows: "and further, on considerations as aforesaid, I do hereby sell and mortgage to Winston Jones & Co. all the crops of cotton, corn, fodder, peas, potatoes, hay, etc., which I may grow, or have grown on said lands or any other lands in said county and State which I may cultivate or cause to be cultivated, and I obligate myself to deliver them at convenient warehouses on the river to be shipped to them in Mobile, and there by them sold in the usual manner on account of the above indebtedness, from year to year, all such crops of cotton as I may grow or cause to be grown; other crops to be disposed of so as to promote the best interests of the parties to this instrument as may be from time to time agreed upon, or sold as the other property is provided to be sold." Under the facts and circumstances Winston Jones & Co. would have been entitled to a specific performance of this contract against E. B. Peebles, on a bill filed for that purpose. This contract was, therefore, binding on his representatives.—*Hays et al. v. Hall et al.*, 4 Port. 385; *Brewer v. Brewer & Logan*, 19 Ala. 489; *Chambers et al. v. Ala. Iron Co.*, 67 Ala. 358; *Strange v. Watson*, 11 Ala. 324; *Jenkins v. Harrison*, 66 Ala. 345; *Meyer v. Mitchell*, 75 Ala. 475, 480. By the contract of January 13, 1896, the administrators evidently intended to carry out the contract contained in the mortgage of their intestate to Jones & Co. of July 10, 1895, and this was not beyond their power and duty, when in order to its performance they had only to rent out the lands of the estate. They had the authority under the statute to rent the decedent's lands, and this without an order of the court, and when the interests of the estate required it, to rent privately; the statute imposing the

duty upon them when lands are rented privately, to repart such renting to the probate court.—Code, 1896, § 154. In *Clark v. Knox*, 70 Ala. 622, it was said by this court, speaking through BRICKELL, C. J.: "The statute (Code of 1876, § 2446)," same as section 154 of the present Code, "clothes an executor or administrator, with the same power to rent, publicly or privately, the lands of the testator or intestate. The power involves the duty, and if there is neglect to exercise it, he is answerable for the loss resulting, as he is for loss from neglect of any other duty with which he is charged."

The bill prays a specific performance of the contract as to the two hundred and seventy-eight bales of cotton now stored in the warehouse of the respondent Mamie E. Peebles. It is exhibited against the respondents in their individual as well as their representative capacity. The facts show that this cotton was grown and raised by tenants during the year 1897, on the lands of the estate and lands of the respondent Mamie E. Peebles, and was received by the respondents from such tenants and stored in said warehouse. Of the two hundred and seventy-eight bales, about one hundred and twenty-five bales were raised on the lands of Mrs. Peebles, and the remainder, about one hundred and fifty-three, on the lands of the estate. Of the one hundred and fifty-three bales grown on the estate lands, about forty-five bales were due for rent, and the remainder, about one hundred and eight, were due for supplies and advances made to the tenants to enable them to make the crop on the rented lands of the estate. There can be no doubt of the validity of the contract as against Mrs. Peebles in her individual capacity, and of the right of the complainants to a specific performance against her as to the cotton grown on her individual lands, and this, the chancellor decreed, but denied relief sought as to the remainder of the cotton, holding that this cotton constituted assets of the estate and that the contract was incapable of enforcement as to it, for the reason that the administrators were without authority to make the contract.

We think it quite clear that the cotton raised by the tenants on the lands of the estate, in excess of the

rents, was the property of the tenants, and independent of any contract as to advances, constituted no part of the assets of the estate. If the cotton due from the tenants for advances, became a part of the assets of the estate, it was by virtue of the contract which is the foundation of this suit, since the supplies and advances so made were obtained through the contract. To hold that this cotton constituted a part of the assets of the estate, would be in effect a ratification of the contract. The advances to make this cotton came from Winston Jones & Co. under the contract. It would be wholly unjustifiable to ratify the contract as to the estate, and at the same time repudiate it as to Winston Jones & Co. In equity the cotton representing the advances made to raise and grow the same, and which was received by the respondents from the tenants on the debt for such advances, was purchased with the money of Winston Jones & Co., and they, the respondents, should be estopped to deny the validity of the contract under which the advances were made and obtained, and by reason of which this cotton came into their possession. And this is true, whether they hold this cotton in a representative or individual capacity.

As to the forty-five bales representing the rent of the estate lands, and which were assets belonging to the estate, it became and was the duty of the administrators under the law, independent of any express contract entered into by them, in their representative copacity, to apply this rent cotton on the mortgage debt, which encumbered the lands,—it was their duty to rent out the lands for the purpose of discharging this mortgage debt with the rents, if it was to the advantage and interest of the estate for it to be paid off in that way. *Clark v. Knox*, 70 Ala. 622; *Patapsco Guano Co. v. Ballard, Admx.*, 107 Ala. 710. If, then, it was their duty, and they had the authority under the law to rent out the lands and so apply the rents, it would seem to logically follow, that they could in their representative character make a valid and binding contract with the mortgage creditor, to apply the rents to accrue from the encumbered lands, in discharge of the encumbrance.

Our conclusion, therefore, is, that the contract of January 13, 1896, was valid and binding and capable

of enforcement against the respondents in their individual capacity as to the cotton grown on the individual lands of Mrs. Peebles, and the cotton received from tenants for advances, that was grown on the estate lands, since such cotton constituted no part of the assets of the estate. And under the principles above stated, the contract was valid and binding and capable of enforcement against the respondents in their representative character as to the rent cotton arising from the encumbered lands.

The foregoing expresses the views of the writer, and in which Justice Tyson concurs. But the majority of the court hold that the respondents were without authority as administrators to enter into the contract of January 13, 1896, and for that reason the same is invalid, and cannot be specifically enforced against them in their representative character.

We cannot consider appellees' cross-assignments of errors, since no appeal was taken by the appellees, nor is there any consent in writing by the appellants indorsed on transcript, nor joinder by appellants in the cross-assignments. See Rule 3 of Practice, page 1187 of the Code, and authorities cited under this rule. It may, however, be stated here, that as to the defense of non-claim set up by the respondents in their answer, on precisely the same evidence offered in this case it was held in the case of *Jones et al. v. Peebles,* 130 Ala. 269; 30 So. Rep. 564, that there had been sufficient presentation of the claim under the statute.

It follows that the decree of the chancellor must be affirmed.