No. 42.—HILLIARD CRUTCHFIELD, plaintiff in error, *vs.* FRANCIS DANILLY, defendant.

[1.] If the seller knows of a defect in the title to a part of the thing he sells, which is material to the enjoyment of the rest, and he does not disclose the defect to the buyer—much more, if he represents to the buyer that no such defect exists, and the buyer buys, ignorant of the defect—the buyer, although he has taken a deed, may, in Equity, have a rescission of the sale.

[2.] Injunction ought not to be dissolved on the coming in of the answer, unless the answer has denied the equity of the bill.

In Equity, from Crawford Superior Court. Decided by Judge POWERS, June Term, 1854.

Motion to dissolve injunction. Francis Danilly filed his bill, setting forth, that in 1852, he had purchased of Hilliard Crutchfield a certain tract of land, containing more than 500 acres, for which he gave notes amounting to $3600.

That Crutchfield, at the time of sale, represented to him that he had good title to the land, and that he purchased, in consequence of such representations.

That in point of fact, as to one hundred and seventy acres of the land, and including the dwelling and buildings, Crutchfield had no title: but that it had been conveyed by deed to his wife and children, by William Smith, her father. That Crutchfield, at the time of the sale, knew of this state of the title, and concealed it from complainant. That Mrs. Crutchfield was now dead, leaving minor children. That complainant was now sued by Crutchfield on the notes, given for the purchase-money, and the bill sought to enjoin those suits and to

Crutchfield *vs.* Danilly.

rescind the bargain. An amendment to the bill, stated that Crutchfield had consented to the making of the deed from Smith to his wife and children, at the time it was made.

The answer of defendant admitted most of the facts alleged in the bill, but stated that at the time of the sale, he had told complainant, that as to the 170 acres in question, he had no written title; that his representation was, that Smith had made him a verbal gift of that part of the land, and that he had held it adversely for more than seven years; so that the Statute of Limitations would protect him. He admitted that he knew of the deed from Smith to his wife and children, but denied that he had consented to its execution: but stated, that when applied to by the person who drew it up, to know whether he would feel hurt with him if he drew it, he had replied that he would not feel hurt, but that Smith had no right to convey the land.

The motion to dissolve the injunction was made on two grounds:

1st. That there was no equity in the bill, and that complainant had an adequate remedy at Common Law.

2d. That if there was equity in the bill, it was sworn off by the answer.

The motion was refused by the Court, and defendant excepted.

MILLER & HALL; HUNTER; R. P. HALL, for plaintiff in in error.

CULVERHOUSE, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The first two questions are confined to the bill. They are these (assuming the bill to be true):

1. Does the bill contain *any equity?*

2. Is not the case made by the bill, one for which there is an adequate remedy *at Law?* This last question is, indeed, included in the first.

[1.] If the seller knows of a defect in the title to a part of the thing sold, which is material to the enjoyment of the rest, and he does not disclose the defect to the buyer, much more, if he represents to the buyer that no such defect exists, and the buyer buys, ignorant of the defect, the buyer, although he has taken a deed, may, in Equity, have a rescission of the sale. (1 *Sug. Vend.* 387. *Edwards vs. McLeay*, 2 *Swans.* 287. *Coffee and others vs. Newsom*, 2 *Kelly*, 460).

Taking the bill to be true, Crutchfield, the seller, in this case, had no title to a part of the land sold by him, namely: one hundred and seventy of the five hundred and fifty-three acres—the part, too, on which stood the dwelling-house and all the other houses.

And yet, he represented to Danilly, the purchaser, *that he had a good title to this part*—represented that his father-in-law, Smith, had given him this part, and that, under the gift, he had held possession of it for more than seven years—whereas, the fact was that Smith had not given him the part, but by deed had given the part to Crutchfield's wife and children, by a deed, to the making of which, he, Crutchfield, had consented.

And all about the making of this deed, Crutchfield concealed from Danilly.

This part of the land was very material, too, to the enjoyment of the rest. The bill says, "and that without this part, the balance would be altogether valueless to your orator, for the purpose for which he intended said lands; that your orator purchased the aforesaid lands upon the aforesaid representations of respondent, your orator having full faith in respondent, for the purpose of a dwelling and farm; that the settlement and dwelling, &c. above described, was the chief inducement to your orator in the purchase".

All which contents of the bill being taken to be true, it follows, by the principle of law above stated, that Danilly, the purchaser, was entitled, in Equity, to have a rescission of the sale.

Not, certainly, if he had an adequate remedy at Law. Did he have an adequate remedy at law?

It was contended for the plaintiff, Crutchfield, that for the

injury in this case, a payment in money, by way of damages, would be an adequate remedy. But what would be the measure of such damages? The injury consists in the loss of nearly a third part of the whole quantity of land supposed to be purchased. How would the loss of such part affect the value of the rest? This depends on a variety of things, and any estimate on the subject would have to partake much of the character of conjecture.

Then the place of settlement was on this part. On it were all the buildings. How are the comforts and enjoyments of home to be estimated in money?

Say, however, that this is a case in which the injury might be measured in money, still the remedy at Law is not adequate. There is no certainty that money will be forthcoming to pay for the injury. It is not certain that Crutchfield will be *able* to pay the money needed for compensation. The chances are that he will *not* be.

The bill states, that the negroes claimed by Crutchfield, or the greater part of them, are in the same situation as the one hundred and seventy acres of land; that they and the land were given, by Smith, to Crutchfield's wife and children, in the same deed.

The bill also states that Crutchfield had been engaged in "mercantile transactions," and "was largely indebted"; and that complainant, Danilly, had reason to fear, and did fear, that he, (Crutchfield) would not be able to make good his warranty, if he, Danilly, should lose the land.

Assuming these statements to be true, it cannot be said that Danilly, in the covenant of warranty, has an adequate remedy at Law—that he has a probability, even, of realizing what he might recover at Law, viz: so much money.

The bill, if true, makes, therefore, a case for a Court of Equity. Has the case, thus made, been denied by the *answer?* That is the remaining question.

The answer admits most of the statements of the bill. It admits that Crutchfield had notice of the intention of Smith, his father-in-law, to make the deed to the wife and children.

The answer does not deny that Crutchfield had reason to believe, and did believe, that Smith had made the deed pursuant to this intention. On the contrary, the answer admits that Crutchfield had heard a report that Smith had signed "such a paper"; and yet, it does not pretend that Crutchfield communicated to Danilly, anything whatever, with respect to this deed and the consequent claim of Smith to the land, which the making of the deed, by him, implied. So far from it, the answer says that Crutchfield told Danilly that Smith had *given* him, Crutchfield, the land. And then the answer also admits that Smith's possession was one without any color of title. To be sufficient, therefore, to give, by help of the Statute of Limitations, a good title to the whole one hundred and seventy acres, it had to be a *possessio pedis*—an actual possession, by use and enclosure (or something equivalent) of the whole one hundred and seventy acres. Was it such a possession as this? The answer does not say that it was, but says what justifies the inference that it was not.

[2.] The case made by the bill, therefore, has not been denied by the answer. And even if it had been, a dissolution of the injunction would not follow as a *necessary* consequence. Even in such an event, there is a discretion in the Court, to say whether or not the injunction shall be dissolved. This has several times been decided to be so by this Court.

The judgment of the Court below ought, therefore, to be affirmed.