No. 107.—P. B. Cox, plaintiff in error, vs. The Mayor & City Council of Griffin, defendants in error.

[1.] Creditors of the Monroe Rail Road & Banking Company levied on certain lots in the City of Griffin. The Mayor & Council of the City of Griffin filed a bill against these creditors, to prevent the levies from being executed, alleging that the lots had been dedicated to certain uses for the benefit of the citizens of Griffin: *Held*, that such a bill lay at the instance of the Mayor & Council of the City of Griffin. But see the opinion.

[2.] Whether an injunction shall be dissolved or not, on the coming in of the answer, is a question for the discretion of the Court.

In Equity, in Spalding Superior Court. Decision by Judge Starke, May Term, 1855.

Some time prior to the Month of June, 1840, the Monroe Rail Road & Banking Company laid off, in the then County of Pike, now the County of Spalding, on the line of the Monroe Rail Road, the place of a city named and entitled the City of Griffin, consisting of divers streets and alleys, building squares and lots, and of squares and lots especially set apart, designated, reserved and dedicated as public squares, sites for churches, academies, burial grounds, and a square as the site of a general parade field and a court-house site.

In June, 1840, the company exposed the city lots to sale, with the reservations of the streets and lots aforesaid, with the public understanding, on the day of sale, that said lots and squares were to be dedicated to religious, educational and public uses. A great number of lots were sold for large prices. Pinkney B. Cox and Gabriel H. Cox obtained judgments against the Monroe Rail Road & Banking Company, long after the sale of the said city lots by said company, and caused the *fi. fas.* issued thereon to be levied upon lots set apart and dedicated as sites for Episcopal and Protestant Methodist Churches; one set apart for a female academy, and one reserved and dedicated for a public square. Also a lot set apart and dedicated as a site for a Presbyterian Church.

The. bill set forth the foregoing facts, and prayed that Pinkney B. and Gabriel H. Cox, be perpetually enjoined from proceeding with their *fi. fas.* against said property.

To this bill Pinkney B. Cox filed his answer, in which he admits that the Mayor & Council of Griffin is a body corporate, created by the Act of the Legislature, passed in 1850, and denies that they had any existence as such, prior to that time.    The defendant admits the laying off the City of Griffin, as charged in the bill, but denies that the lots levied on were dedicated to public uses; and charges that they are now vacant and unoccupied.

The defendant, in his answer, denies. that the Mayor & City Council have any jurisdiction or authority over the lots and squares in said city, which have been levied on.

The defendant denies that the Monroe Rail Road Company ever made any donation of the lots, either public or private; and charges that the legal title to the same is still in the company. The defendant charges that the said company is insolvent and owns no other property, subject to his claims, than that which has been levied on, and insists that the complainant is a volunteer and an interloper—having no right or authority to interfere.

Upon the coming in of the answer, defendant moved the Court to dissolve the injunction, upon the grounds—

1st. Because the equity of the bill is sworn off.

2nd. Because the complainant does not show that he has any interest in the property, or any title thereto, or privity with the parties; and does not show the legal title out of the company, or that he has any right of trusteeship over said property, by charter or otherwise."

The complainant moved the Court to read the affidavits of A. A. Gaulding and William M. Leak, in support of his bill, in substance, as follows: "that deponents were present at the sale of lots in the City of Griffin, in June, 1840, by Lewis L. Griffin, the President of the Monroe Rail Road & Banking Company; that the said Griffin, then and there, in a

public speech, stated as an inducement for purchasers to pay higher prices for lots, that the public squares, church and academy lots, were reserved and dedicated by the company for the use of the public, for the purposes specified in the plan of said city, and that those purchasing lots would purchase an interest in said lots so dedicated," &c. &c.

To the reading of these affidavits defendant objected, upon the ground that the affiants were citizens of Griffin ; and as such, liable to pay taxes for Lawyers' fees, costs, &c. in this case. The Court over-ruled the objection and allowed the affidavits to be read, and defendant excepted.

After argument being had on the motion to dissolve the injunction, the Court over-ruled the motion and refused to dismiss the bill, and defendant excepted.

Cox, for plaintiff in error.

ALFORD & MOORE, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

Ought the injunction to have been dissolved ? This is the only question.

The motion to dissolve the injunction was put upon the two following grounds :

" First. That the equity in said bill is sworn off.

" Secondly. That the complainant does not show that he has any interest in the property, or any title thereto, or privity with the parties ; nor does he show legal title out of the Monroe Rail Road & Banking Company ; nor does he show his right of trusteeship over said property, by charter or otherwise."

The latter of these two grounds may be resolved into the general proposition, that even if the bill be true, the complainant had no right or title to sue in respect to the matters stated in the bill. This ground will be first considered.

The complainant, the Mayor and Council of the City of

Griffin, states its claim to the right to bring the bill in the following words : " And your orator further states that the corporate authority of the said City of Griffin extends, by law, over all that area of land lying within one mile of the centre of said city, according to its original plan ; and that the several streets and alleys, public squares, church squares or lots, academic squares or lots, court house square, burying-ground and general parade-field, hereinbefore mentioned, are within the corporate limits and jurisdiction of said city.    And your orator avers, that among the powers and duties appertaining to your orator, under the charter of the City of Griffin, and resulting from your orator's character and functions as a municipal corporation, is that of exercising municipal care, protection and trusteeship of and over the streets and alleys aforesaid of said city, and of and over the aforesaid public squares, church squares or lots," &c.    " It is clearly part of your orator's duty and jurisdiction to take care and see to it, that said parcels of land, nor any portion thereof, be stripped in any manner, or by any means, of the public character impressed on them in the original plan of the city, or be, by any mode, converted into mere private property," &c.

The complainant does not claim that in these lots, squares, alleys and streets, it has any *property* whatever.    It merely claims, that " among the *powers* and *duties* appertaining" to it " is that of exercising municipal care, protection and trusteeship of and over the streets and alleys," &c. of the city ; and that, by virtue of this, it has the right to prosecute this suit ; a suit, the object of which is to prevent the sale of the streets, alleys and lots aforesaid, as private property, under execution against the Monroe Rail Road & Banking Company.

What, then, are the " powers and duties appertaining" to the Mayor and Council of the City of Griffin ?

When this case was argued before us, we found it difficult to investigate this question.    The suit was commenced in 1853.    At that time, a Statute of 1850 was in force, which, among other things, declared that " the said Mayor and Council of the City of Griffin, shall be" " entitled to all the cor-

porate privileges of the corporate authorities of the City of Augusta." And the charter of the City of Augusta we could not procure. No book that we could find at Decatur contained a copy of that charter.

And this point in the case turned upon what that charter contained; for although the Act aforesaid of 1850, was repealed in 1854, by an Act "to amend an Act to incorporate the City of Griffin," &c. yet this latter Act was not, as it seemed, relied on at all for any purpose, by either party. The defendant admits the complainant to be a still subsisting corporation under the Act of 1850. His language is, "this respondent admits that the Mayor and Council is a body corporate, created by Act of the Legislature of the State of Georgia, approved February 21st, 1850; and that the charter, according to said Act of Incorporation, is declared to be the same as the present charter of the City of Augusta."

All of which being so, it followed that we had to decide this point in the absence of the law which, governed it.

It was the recollection of one member of the Court, that the grant of power to the corporation of Augusta, was quite a broad grant—sufficiently broad to authorize, in his opinion, such a bill as the present one.

That bill had had the sanction of His Honor, Judge STARKE, of the Superior Court.

[1.] Under such circumstances, what could this Court do but affirm the action of the Court below, and say that the present bill is one which the complainant, in its corporate character, could bring? This, therefore, is what it did.

But as one member of the Court, I took occasion to say to the other two members, that if, when I should come to write out the opinion of the Court, I should find the charter of the City of Augusta to be such as not, in my opinion, to sustain the Court's judgment on this point, I should, for myself, feel bound to say so.

And this I shall now do; for having examined that charter, I do not think that the judgment of the Court, on this point, is sustained by it.

The following are the words in which this charter confers power or franchises of a general nature, on the "City Council of Augusta:" "And they and their successors hereafter to be appointed, shall have a common seal, and shall be capable, in law, to purchase, have, hold, receive, enjoy, possess and retain to them and their successors in office, for the use of the City of Augusta in perpetuity, or for any term of years, any estate or estates, real or personal, messuage, lands, tenements or hereditaments, of what kind or nature soever, within the limits of the said city, and to sell, alien, exchange or lease the same or any part thereof as they shall think proper, and by the same name to sue and be sued, plead and be impleaded, answer and be answered unto in any Court of Law or Equity in this State; and they shall also be vested with full power and authority, from time to time, under their common seal, to make and establish such by-laws, rules and ordinances respecting the harbor, streets, public buildings, workhouses, markets, wharfs, public houses, carriages, wagons, carts, drays, pumps, buckets, fire engines, the care of the poor, the regulation of disorderly people, negroes; and, in general, every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of the said city, or for preserving peace, order and good government within the same; and the said city council shall also be vested with full power and authority to make such assessments on the inhabitants of the City of Augusta, or those who hold taxable property within the same, for the safety, benefit, convenience and advantage of the said city, as shall appear to them expedient; and to affix and levy fines for all offences committed against the by-laws of the said city; and they are hereby authorized to appoint a clerk, treasurer, harbor master, fire master, marshal, constables and all such other officers (affixing the salaries and fees of such officers respectively) as shall appear to them requisite and necessary for carrying into effectual execution all the by-laws, rules and regulations they may make for the good order and government of the said city, and the persons residing therein :

*Provided*, that nothing herein contained shall authorize to remove or alter the place for the public market house within the said city, but the one now established may be enlarged or extended as the convenience of the citizens may from time to time require; nor shall they make any by-laws repugnant to the Constitution or laws of the land: *And provided, also*, that the by-laws, rules and ordinances they make shall at all times be subject to the revisal, alteration or repeal of the Legislature." (*Mar. & Craw.* 138.)

Now among the powers conferred by these words, I see none which, in my opinion, authorizes the corporation to bring such a bill as this is. The power to make by-laws of any kind cannot, I think, authorize such a bill. The bringing of such a bill cannot be in the exercise of the power to make a by-law; nor, indeed, is it pretended that this bill was brought for the violation of any by-law.

Such acts as those complained of in this bill could not, as far as I can see, interfere with the exercise of any one of the powers enumerated in the aforesaid words of the charter.

And if this be so, on what ground is it that the corporation can justify the bringing of a bill, with respect to such acts? It could exercise all of its powers to the full, notwithstanding that such acts should be done. What need, then, would it have of any aid from Equity? If the acts were such as would, if done, stop it from exercising any of its powers, then it would have a reason for asking Equity to prevent such acts from being done.

And, if such acts as those complained of in this bill would not interfere with the exercise of any of the "*powers*" of the corporation, they could not interfere with the performance of any of the "*duties*" of the corporation; for it cannot be the duty of a corporation to do more than exercise all of its powers.

The *charter*, then, did not, as it seems to me, give the Mayor and Council of the City of Griffin the right to bring this bill.

And when I look into general law, (if I am at liberty, in

such a case, to look there at all,) I also find nothing which, as I think, authorizes such a bill.

All remedies are for injuries to rights; and all rights relate either to the person or to property.

But the acts complained of in this bill do not injure any right relating either to the person or to the property of the complainant.

Could this complainant compromise the matter in controversy in this case, or release the defendant from liability on account of the acts complained of, so that the compromise or the release would be a bar to any action which the citizens of Griffin, or any of them, might have against the defendant for such acts?    According to the bill, it is those citizens who own all the rights which resulted from the alleged dedication made by the Monroe Rail Road & Banking Company.    As to those rights, the corporation owns nothing whatever.    They would continue to exist if the corporation were extinguished forever.

I can find no precedent, and I know of no principle, which warrants a bill of this kind.    I am obliged to say, therefore, that I think that the judgment of the Court (which I concurred in giving) was wrong.    I now think that the complainants had no right to bring such a bill as the present one is; and, therefore, of course, I think the Court below was in error not to dissolve the injunction.    That was all it was asked to do.

The other question is, was the equity of the bill sworn off?

We rather think it was.    But still, we cannot say that it follows that the injunction should, as a matter of course, have been dissolved.    This Court has more than once held that the dissolving or not dissolving of an injunction, is a matter within the discretion of the Court.    (15 *Ga. R.* 556.    12 *do.* 8.    9 *do.* 552; and see 13 *do.* 145.)

In this case, the main matter in dispute happened nearly fifteen years before the answer was filed.    It was of a nature, too, about which the memory might well be at fault. The question, as raised by the bill and answer, was, whether

the sale of the city lots was according to one plan of a city or according to another, but not very and dissimilar plan.

In such a state of things, the Court might properly, as we think, in the exercise of its discretion, listen to the affidavits filed by the complainants in support of the statements in the bill ; and so, refuse to dissolve the injunction.

And how much the credibility of the affiants was affected by the fact that they were citizens of Griffin, was a question for the Court.

[2.] In short, in the refusal of the Court to dissolve the injunction, we do not see any "flagrant abuse" of discretion.

We therefore affirm the judgment of the Court below.