## BIBB *vs.* SHACKELFORD.

[BILL IN EQUITY TO RESTRAIN ERECTION OF MILL-DAM.]

1. *Dissolution of special injunction on answer.*—Where irreparable mischief might result from the dissolution of a special injunction, restraining the erection of a dam, which would create a malarious pond injurious to the health of the surrounding community, the chancellor may, in his discretion, retain the injunction until the hearing, notwithstanding the denials of the answer; but, if the chancellor, in the exercise of his discretion, dissolves the injunction on the answer, the appellate court will not reverse his decree, unless fully and satisfactorily convinced that he erred.

APPEAL from the Chancery Court at Montgomery.
Heard before the Hon. N. W. COOKE.

THE bill in this case was filed, on the 10th October, 1861, by Joseph B. Bibb, against George W. Shackelford and others ; and sought to restrain the defendants from erecting a mill-dam across Pintlala creek at a point which was situated in the complainant's plantation. The lands surrounding the mill-site, through which said creek flows, once belonged to George Shackelford, since deceased, who was the father of the defendants, and who conveyed the said land, on the 2d March, 1849, to one Calloway, who afterwards sold and conveyed to Hiram Pierce and William T. Mason, who sold and conveyed it to Fleming Freeman, who, on the 29th December, 1857, sold and conveyed to the complainant ; and copies of these several conveyances were made exhibits to the bill. The bill alleged, that said George Shackelford, while he owned the land, had a grist-mill on the creek ; that after his sale and conveyance to Calloway, under some agreement between them, "he retained the possession and use of the mill, until about the year 1850, when the same was abandoned as useless, the dam having been broken, aad has never since been repaired, or used, or been in the possession of any other person than the owner of said lands, until a short time ago, as herein-

after mentioned ;" that the defendants, a short time before the filing of the bill, asserting a claim of title to the mill-site under a written instrument, which purported to be executed by said Calloway to their father, (and a copy of which was made an exhibit to the bill, but which, if genuine and founded on sufficient consideration, the complainant insisted could have no effect against him as a purchaser for valuable consideration without notice,) entered on the lands, and commenced to rebuild the mill-dam; "that the said mill-dam, if erected, will cause complainant's lands to be overflowed and damaged by said creek, and will be a nuisance to his lands, as well as others in the neighborhood, by causing sickness ;" and that he would be compelled to abandon his settlement, to prevent sickness in his family, unless the erection of the dam was restrained.

A separate answer was filed by George W. Shackelford, who claimed to be in possession of the mill-site, and asserted title thereto under his father and a reservation in his father's conveyance to Calloway. In response to the allegation that the mill-pond would produce sickness, the answer contained the following statement : "Defendant has resided all his life, with short exceptions, in the neighborhood of said mill-site, and never before heard of any person who feared or believed that said pond would create sickness of any kind. On the contrary, defendant has been informed by Dr. W. H. Rives, a physician who resided for more than twenty years within one mile of said pond, that said pond did not, in his opinion, cause or create any sickness; and the same opinion has been expressed to defendant by many other persons residing in the immediate neighborhood. Defendant denies, therefore, both from his own knowledge, and from belief founded on knowledge obtained as aforesaid, that said pond will cause or create any sickness whatever." The defendant also demurred to the bill, for want of equity, and because the complainant had an adequate remedy at law.

The chancellor dissolved the injunction on the denials of the answer, and his decree is now assigned as error.

JNO. A. ELMORE, with whom was S. F. RICE, for the appellant, cited *McBrayer v. Hardin*,7 Ired. Eq. 3 ; *Parnell v. Daniel*, 8 *ib.* 9 ; *Capeheart v. Moore*, Busbee's Eq. 30 ; *Lloyd v. Heath*, *ib.* 39.

WATTS, JUDGE, JACKSON & TROY, *contra*, cited *Hill v. Averett*, 27 Ala. 484 ; *Brooks v. Diaz & Co.*, 35 Ala. 599 ; *St. James' Church v. Arrington*, 36 Ala. 548 ; *Rosser v. Randolph*, 7 Porter, 245 ; 10 Ala. 64.

A. J. WALKER, C. J.—Special injunctions are contradistinguished from injunctions designed to restrain proceedings in courts of common law, which, in England, are granted upon the defendant's default.—3 Dan. Ch. Pl. & Pr. 1811 ; 1 Hoff. Ch. Pr. 78. The dissolution of special injunctions, when the equity of the bill is controverted in the answer, is usually a matter of course, but, *to prevent irreparable mischief*, the chancellor is clothed with a discretion over the subject ; and the injunction may, therefore, in proper cases be retained, notwithstanding the negation of all equity by the answer.—*Poor v. Carlton*, 3 Sumner, 70 ; *Clum v. Brewer*, 2 Curtis, 506, 518 ; *Hollister v. Barkley*, 9 N. H. 230 ; *Orr v. Littlefield*, W. & M. 19 ; *Attorney General v. Bank*, Walker's Ch. R. (Michigan,) 90 ; *Brooks v. Diaz*, 35 Ala. 599 ; 3 Leading Cases in Equity, 204.

Some of the decisions go so far as to maintain the proposition, that the question of the dissolution of all injunctions is left to the discretion of the chancellor, "on a full and liberal view of all the circumstances, which make for or against the dissolution."—*Boyd v. Anderson*, 2 Johns. Ch. 202 ; *Loyless v. Howell*, 15 Ga. 554 ; *Semmes v. Mayor of Columbus*, 19 Ga. 471 ; *Cox v. Mayor of Griffin*, 18 Ga. 728 ; *Crutchfield v. Danilly*, 16 Ga. 432 ; *West v. Rouse*, 14 Ga. R. 715 ; *Swift v. Swift*, 13 Ga. 140 ; *Dent v. Summerlin*, 12 Ga. 5 ; *Holt v. Bank of Augusta*, 9 Ga. 552 ; *Hemphill v. Bank*, 3 Kelly, 432. Upon this proposition we do not now announce an opinion.

The injunction here was special. The merits of the case,

for the purpose of the question in hand, centre in the allegation, that a dam, which the defendant was erecting, would produce a malarious pond, and injuriously affect the health of the community. This the defendant denied. Notwithstanding this denial, the chancellor had a discretion as to the dissolution of the injunction. The authorities show that, in many cases, where irreparable injury might result from a dissolution, if the bill should be really true, although denied by the answer, the injunction has been retained.—*Troy v. Norment*, 2 Jones' Eq. 318 ; *Lloyd v. Heath*, Busbee's Eq. 39 ; *James v. Lemly*, 2 Ired. Eq. 278 ; *Swindall v. Bradley*, 3 Jones' Eq. 353 ; *McBrayer v. Hardin*, 7 Ired. Eq. 1. In this case, if the bill be true, a dissolution of the injunction, followed by the erection of the defendant's dam, would cause injury to health, and, perhaps, loss of life. This case is, therefore, of that class in which the chancellor would, in the exercise of his discretion, ordinarily retain the injunction until the hearing, notwithstanding the denial of the answer.

There are some circumstances presented here, which doubtless controlled the chancellor's discretion, and led him to dissolve the injunction. The bill alleges no facts, from which the pernicious influence of the contemplated pond could be inferred with certainty. It states that from which the probability of the production of sickness might be argued. Beyond that, the case rests upon the naked assertion, that the pond will produce sickness. This assertion is not shown to have any other basis than the judgment of the plaintiff. It is a fact in the case, undeniable, because it is indicated in a title-paper, and shown in the bill and answer, that a dam had before stood at the same place, where the defendant was about to erect his dam. A strong argument for or against the proposition, that the pond would produce sickness, was deducible from the effect of the previous pond. If the former pond had been unhealthy, it is fair to infer that the complainant would have alleged the fact, which would have so much strengthened his case. His failure to allege that fact goes far to show that it did not

exist, and, therefore, could not be alleged.    We are, for that reason, justified in giving full credence to the assertion of the answer, that a pond had existed for many years, in precisely the same locality, without in any degree injuring the health of the community, or, indeed, being suspected of having that effect.

The Georgia supreme court refuses to reverse the chancellor's decree, made in the exercise of his discretion, unless it has been *flagrantly* abused.—*Loyless v. Howell*, 15 Ga. 554.    See, also, *Jeter v. Jeter*, 36 Ala. 391.    We think we may safely go so far as to say, that we will not reverse sucha decree, unless we feel a full and satisfactory conviction that the chancellor has erred.    We are not sure that, in the exercise of our judgment, we would have dissolved the injunction ; but, when we weigh the circumstances above referred to, we can not feel such a conviction that the chancellor has erred, as will justify us in reversing his decree.

Affirmed.