# East and West Railroad Company of Alabama *et al. v.* East Tennessee, Virginia & Georgia Railroad Company.

*Bill in Equity to enjoin Railroad Company from Constructing its Railroad on the Right of Way of another Railroad Company.*

1. *Grant of injunction by officer without authority ; remedy for correction of error.*—When an injunction is granted by a judicial officer who has no authority to grant it, the error or irregularity is only available upon motion for a discharge of the injunction, which must precede any act on the part of the defendant in recognition or affirmance of its regularity. In such case, a motion to dissolve is not the appropriate remedy, but is a waiver of the error or irregularity.

2. *City Court of Selma ; authority to issue remedial writs.*—The City Court of Selma, being, by the express terms of the statute creating it, clothed with "the authority to issue writs of injunction, *mandamus, certiorari,* prohibition, *ne exeat,* and all other remedial writs," has, under the well defined legislative policy of this State, intended to expedite the administration of justice, the authority to issue, or order the issue of such writs, returnable into any court of the State having jurisdiction of them.

3. *Motion to dissolve injunction for want of equity ; what inquiries opened by.*—A motion to dissolve an injunction for want of equity in the bill can not perform the office of a demurrer to the bill; but, on the hear-

[East & West R. R. Co. of Ala. v. East Tenn., Va. & Ga. R. R. Co.]

ing of such motion, all amendable defects should be regarded, *pro hac vice*, as cured by amendment, and the inquiry made, whether, if the facts were well pleaded, the case would be of equitable jurisdiction, and an injunction the appropriate remedy.

4. *Corporations invested with right of eminent domain ; jurisdiction to enjoin from appropriating land without making compensation.*—The principle upon which a court of equity proceeds in interfering to prevent bodies corporate having compulsory power to enter upon, and to take and appropriate for their own uses, the lands of others, differs materially from the principle upon which it intervenes to prevent the commission or continuance of waste, nuisances, or trespasses, when only private rights, or the rights of persons, natural or artificial, not having such powers, are involved ; the court intervening, in such cases, because of the necessity to keep such corporations within control and in subjection to the law, rather than upon the theory that they are trespassers, or that the injury which they are inflicting is irreparable.

5. *Same ; when bill contains equity.*—Hence, averments in a bill filed by one railroad corporation against another, to enjoin the defendant from constructing its railroad on the complainant's right of way, that the defendant has wrongfully taken possession of lands of which the complainant was possessed, and is appropriating the same to its uses, that it had not proceeded to the condemnation of the lands in the mode prescribed by law, and had not, in obedience to the Constitution, made just compensation therefor, give the court jurisdiction to prevent the further invasion of the property by the defendant, without regard to any question of irreparable injury.

6. *Same ; when court will not interfere.*—If, however, in such case, the right and title of the complainant are not clear, or if the whole controversy resolves itself into a naked dispute as to the strength of the legal title, and it is not shown that an action of trespass or of ejectment will not afford all necessary relief, the court will not intervene by injunction.

7. *Same ; when injunction against should be dissolved on denials in answer.*—Where, by the averments of such bill, the complainant's title to the lands in controversy is based wholly on the fact of continuous, uninterrupted possession by it and those under whom it claims, and the defendant, in its answer, verified by affidavit, directly and unequivocally denies the fact of possession by the complainant at the time of the entry upon, and taking of the land, and also the prior possession by the complainant, or by those under whom it claims, and avers that the title and possession resided with other parties, from whom the defendant had a license or conveyance, under which it entered, and commenced the appropriation of the land, the temporary injunction, issued on the filing of the bill, should, on motion, be dissolved ; it being clear that less injury would result to the complainant from its dissolution, than would result to the defendant from its continuance to the final hearing.

APPEAL from Calhoun Chancery Court.

Heard before Hon. N. S. GRAHAM.

The case made by the record is stated in the opinion.

INZER & GREENE and JNO. H. & J. M. CALDWELL, for appellants. (1) The jurisdiction of the City Court of Selma, and the powers and authority of the judge thereof, in the matter of issuing remedial writs, are limited to the county of Dallas. This point discussed, and the following citations made and commented on : Con. of 1875, Art. VI, §§ 2, 6, 13; Code, 1876, § 3867 ; 1 Brick. Dig. p. 675, § 512 ; Pamph. Acts,

[East & West R. R. Co. of Ala. v. East Tenn., Va. & Ga. R. R. Co.]

1875-6, p. 386. (2) A court of equity should not interfere by injunction, where the right is doubtful, or the investigation by a jury as to facts in dispute is required.—*Roath v. Driscoll*, 52 Am. Dec. 352; *Snowden v. Noah*, 14 Am. Dec. 547; *Hart v. Mayor, etc.*, 24 Am. Dec. 165; *Nevitt v. Gillespie*, 26 Am. Dec. 696. See also 3 Wait's Ac. & Def. p. 683, §§ 3, 4; *Ib.* p. 685, § 9; *Ib.* pp. 694, 700, 701, 702, 761; High on Inj. p. 7, § 8; *N. O. & S. R. R. Co. v. Jones*, 68 Ala. 55; *Boulo v. N. O., M. & T. R. R. Co.*, 55 Ala. 480; 44 Am. Dec. 422. (3) The injury threatened must be of such a nature as will cause irreparable damage, not susceptible of pecuniary compensation.—3 Wait's Ac. & Def. p. 701; *Ib.* p. 761, § 6. See also 1 Brick. Dig. p. 673, § 482, 486; 35 Ala. 599; *Jones v. N. O. & S. R. R. Co.*, 70 Ala. p. 230; High on Inj. § 391. (4) "Mere general averments of irreparable mischief is not enough, but the facts constituting such mischief should be set forth."–3 Wait's Ac. & Def. 701. (5) On the coming in of an answer either admitting or denying the allegations of the bill, the court will, on motion, dissolve the injunction, and dismiss the bill, if it is wanting in equity.—1 Brick. Dig. p. 677, §§ 546–7. (6) When the answer positively denies the averments of the bill, the general rule is, that a temporary injunction must be dissolved; the exception being, where irreparable mischief will follow, or the intervention of special circumstances, taking the case out of the rule.—*Satterfield v. John*, 53 Ala. 127; *Yonge v. Shepperd*, 44 Ala. 315; *Mobile School Com'ers v. Putnam*, 44 Ala. 506. See also 1 Brick. Dig. p. 677, § 548; *Bibb v. Shackelford*, 38 Ala. 611; High on Inj. p. 218, § 388.

Heflin, Bowdon & Knox, *contra*. (1) Upon a motion to dissolve an injunction, all amendable defects in the bill will be considered as amended, *pro hac vice*. Consequently, if the bill has equity, mere want of fullness of statement, or clearness of averment will not be regarded. Such objections are good on demurrer, but not on a motion to dissolve an injunction.—*Chambers v. Alabama Iron Co.*, 67 Ala. 353. (2) The equity of the bill rests upon the ground, that the building of a railroad upon another's land is a permanent and irreparable injury, for which there is no other adequate remedy. This point discussed, with following citations: 1 Railway Cases, 135; *N. O. & S. R. R. Co. v. Jones*, 68 Ala. 48; High on Inj. §§ 391 *et seq.* (3) The equity of the bill is fully sustained, not only on the general jurisdiction of the court to restrain the construction of a railroad upon another's land, but upon the additional ground, that the construction of such road so near to the complainant's road, will impair, if not permanently destroy the value of complainant's property. (4) If it be con-

ceded that the answer fully denies the equity of the bill, this court will not disturb the injunction. Cases of this sort are left largely to the discretion of the chancellor, and this court will not disturb his decree, unless it is clearly erroneous. In this case, the chancellor guarded the interests of respondents, by increasing the bond, thereby affording them ample protection.—*Bibb v. Shackelford*, 38 Ala. 611; *Chambers v. Alabama Iron Co.*, 67 Ala. 353. And where a railroad company has been enjoined from the use of land, without having made payment or tender of damages, as provided in its charter, and without the consent of the owner, the injunction will not usually be dissolved, on motion, before the hearing upon the merits.—High on Inj. § 392; *Ross v. Elizabethtown, etc.*, 1 Green Ch. 422. (5) The denials of the answer discussed. (6) There is nothing in the objection, that the judge of the City Court of Selma had no jurisdiction to issue the injunction. The statute creating the court expressly confers on him the power.—Pamph. Acts, 1875–6, p. 386.

BRICKELL, C. J.—The case comes before the court on appeal from a decree of the chancellor rendered in vacation, upon a motion made, on bill and answer, for the dissolution of a temporary injunction, restraining the appellants from the continuance of the construction of a railway on lands claimed by the appellee as part of its own right of way. The temporary injunction was granted by the judge of the City Court of Selma, the bill being filed, and the lands situate in Calhoun county.

The first ground for the motion, now pressed in argument, is, that the judge of the City Court of Selma has not the power to grant an injunction which is to be operative without the county of Dallas. If this were conceded to be true, a motion for the dissolution of the injunction is not the appropriate remedy for the correction of the error or irregularity. A motion to dissolve can be founded only on a want of equity apparent on the face of the bill, or on a full and complete denial, by the verified answer of a material defendant, of the allegations upon which the equity of the bill depends. The motion itself is a waiver of the error or irregularity, if any, which may have attended the order for the issue of the writ, or which may be in the writ alone. These are available only upon motion for a discharge of the injunction, which must precede any act on the part of the defendant in recognition or affirmance of its regularity.—*Jones v. Ewing*, 56 Ala. 360.

The City Court of Selma is an inferior court of law and equity, established by an act of the General Assembly, in and for the county of Dallas. It is styled an inferior court, not be-

cause of limitations upon its jurisdiction, but because its judgments and decrees, like the judgments of the circuit court, and the decrees of the court of chancery, are open to revision on appeal to this court, and may here be reversed or affirmed; and over the court, as over all the judicial tribunals of the State, this court can exercise a general superintendence and control.—*Nugent v. State*, 18 Ala. 521; *Ex parte Roundtree*, 51 Ala. 42.  By the statute creating it, the judge, in general terms, is clothed with power and jurisdiction co-extensive with that which is exercised by chancellors and judges of the circuit court; the statute proceeding to declare specially that the power and jurisdiction include " the authority to issue writs of injunction, *mandamus*, *certiorari*, prohibition, *ne exeat*, and all other remedial writs."   It is true the court is organized for the county of Dallas; that is the locality in which it dwells, and to which its jurisdiction is confined.   But the jurisdiction of the court is distinguishable from the authority of the judge to grant remedial writs, which are mere auxiliaries to the exercise of jurisdiction, and which, when returned to the court to which they are issued, are subject to its control, and are temporary in their operation.   It is a well defined legislative policy, intended to expedite the administration of justice, to confer on all judicial officers, of the jurisdiction and dignity of the judge of the city court, authority to issue, or to order the issue of such writs, returnable into any court of the State having jurisdiction of them.   And it was in view of this policy, that, in express terms, the authority to issue such writs was conferred upon the judge of the city court, and not left to be derived by implication from the general grant of jurisdiction and power.   We are, therefore, of opinion, that the judge of the city court had authority to order the issue of the writ of injunction.

The allegations of the original bill are, that the complainant, the " East Tennessee, Virginia & Georgia Railroad Company," is a corporation created by, and organized under the laws of the State of Tennessee; that in 1881, by purchase, it acquired the property and franchises of the Selma, Rome & Dalton Railroad Company, which had a line of railway in this State, extending from Selma in a north-easterly direction to Prior's station, at or near the boundary line of the State of Georgia. Prior to, and at the time of the purchase, and continuously from the year 1870, the Selma, Rome & Dalton Railroad Company and its alienees had, and was possessed of a right of way along its road-bed, extending through the county of Calhoun, of one hundred feet, that is, of fifty feet on each side of the road-bed, computing from its centre.   After the purchase, the complainant entered upon, and became possessed of such

right of way, remaining in possession until the grievance committed by the defendants. Without the consent of the complainant, the defendants, in February, 1884, entered upon a designated part of the said right of way, not having had the same condemned by any judicial proceeding, not having made or offered to make compensation to the complainant, and commenced the construction thereon of the track or bed of the "East & West Railroad Company of Alabama." The construction and completion of the said track or bed will be of irreparable injury to the complainant, because, in particular places, the track or bed of the two roads will be in less than thirty-two feet of each other, and, in the words of the bill, will be "too close together for safe and convenient operation ; too close together to admit of side tracks between, of convenient and suitable length and curve."

The first point for consideration, not now looking to the answer, is, whether, upon the facts stated in the bill, a case of equitable jurisdiction is presented. For, although a motion to dissolve an injunction is submitted and heard in vacation, it should be sustained, the injunction ought not to be longer continued, whether the answer is, or is not sufficient, if it be apparent that the bill is without equity. The motion to dissolve, it ought, however, to be observed, can not and does not perform the office of a demurrer. It is not the form of the bill, nor the manner in which the facts are stated, nor the specific prayer for relief, which are of importance. All amendable defects, *pro hac vice*, should be regarded as cured by amendment, and the inquiry made, whether, if the facts were well pleaded, the case would be of equitable jurisdiction, and an injunction the appropriate remedy.—*Chambers v. Ala. Iron Co.*, 67 Ala. 353.

The principle upon which a court of equity proceeds, in interfering to prevent bodies corporate having compulsory power to enter upon, take and appropriate for their own uses, the lands of others, differs materially from the principle upon which it intervenes to prevent the commission or continuance of waste, or of nuisances, or of trespasses, when only private rights, or the acts of persons, natural or artificial, not having such powers, are involved. In the latter class of cases, if the right be strictly legal, and there is no relation of privity between the parties, it is of the essence of the jurisdiction of the court, that a case of irreparable injury be shown ; a case for which the courts of law do not furnish an adequate remedy. The Constitution not only compels all corporate bodies, public or private, or all individuals who may be armed with the power of taking private property, but it compels the State and all its agencies and instrumentalities, to the duty

[East & West R. R. Co. of Ala. v. East Tenn., Va. & Ga. R. R. Co.]
of first making just compensation to the owner. The duty
is clearly expressed in the twenty-fourth section of the
" Declaration of Rights," directed to any and every taking
of private property, without regard to the agency or in-
strumentality through which it may be taken, in these
words : " But private property shall not be taken or applied
for public use, unless just compensation be first made therefor."
The property and franchises of corporations, it is declared, are
as subject to the right of eminent domain, as is the property of
natural persons, but here, as in all other cases, it is declared,
just compensation must attend or precede the taking and ap-
propriation. And, again, it is declared by the seventh section
of the fourteenth article : " Municipal and other corporations
and individuals, invested with the privilege of taking private
property for public use, shall make just compensation for the
property taken, injured or destroyed, by the construction or
enlargement of its works, highways or improvements, which
compensation shall be paid before such taking, injury or de-
struction." It is most essential to the preservation of the
rights of private property, to the protection of the citizen, and
to the preservation of the best interests of the community,
that all who are invested with the right of eminent do-
main, with the extraordinary power of depriving persons,
natural or artificial, without their consent, of their proper-
ty, and its possession and enjoyment, should be kept in the
strict line of the authority with which they are clothed,
and compelled to implicit obedience to the mandates of
the Constitution. A court of equity will intervene to keep
them within the line of authority, and to compel obedi-
ence to the Constitution, because of the necessity that they
should be kept within control, and in subjection to the law,
rather than upon the theory that they are trespassers, or that
the injury which they are inflicting is irreparable. The owner
of the land has the right to say that, unless they keep within
the strict limits prescribed by law, they shall not disturb him
in the possession and enjoyment of his property. The power
is so capable of abuse, and those who are invested with it are
often so prone to its arbitrary and oppressive exercise, that a
court of equity, without inquiring whether there is irreparable
injury, or injury not susceptible of adequate redress by legal
remedies, will intervene for the protection of the owner. And
it will intervene, though, as in the present case, the contest may
be between two incorporated companies.—Kerr on Injunctions,
§§ 622 et seq. ; M. W. R. R. Co. v. Owings, 15 Md. 199 ; Bo-
naparte v. C. & A. R. R. Co., 1 Baldwin 205 ; Commonwealth
v. P. & C. R. R. Co., 24 Penn. St. 159.

It is not of importance, therefore, to subject to analysis the

allegations of the bill, and determine whether irreparable injury, in the sense of that term in a court of equity, is shown by them. If, in this respect, they are too general, the defect would be curable by amendment, and, however available on demurrer, will not support a motion for the dissolution of the injunction. We do not, however, intend resting our decision upon this point. It is affirmatively and distinctly averred that lands of which the complainant was possessed, have been wrongfully taken possession of by the defendants, and are being appropriated to the uses of the defendant corporation, which has not proceeded to their condemnation in the mode prescribed by law, and has not, in obedience to the Constitution, made therefor just compensation. These facts, of themselves, without regard to any question of irreparable injury, give the court jurisdiction to prevent the further invasion of the property. The necessity for keeping the defendant corporation within the limits of its authority, and for compelling obedience to the Constitution, is apparent; and it is this necessity which is the foundation of the jurisdiction of the court.

The averments of the bill deduce the title of the complainant to the lands, the subject of controversy, wholly from its possession, and from the antecedent possession of its privies or predecessors in estate, so long continued as to be evidence of title. Whether the title was derived originally from the license, or from the conveyance of the owner, or through judicial proceedings to which they were parties, is not averred. The fact of continuous, uninterrupted possession is vouched as the foundation and evidence of the right and title of the complainant. And, in this connection, it must not be overlooked that it is not the track or road-bed of the complainant, nor any of its side-tracks, or other like appurtenances of visible, notorious, continuous use, which form the subject of controversy. Beyond these, though within fifty feet of the centre of the track or road-bed of the complainant, the parcel of land in controversy is situated. The answer is in direct, unequivocal denial of the fact of possession by the complainant at the time of the entry upon, and taking of the land, and in like denial of a prior possession by the complainant, or by its privies or predecessors in estate. And, with equal clearness and distinctness, it affirms that the title and possession resided with other parties, from whom the defendant corporation had a license, or conveyance, under which it entered upon possession, and commenced the appropriation of the lands. The answer, in so far as it is in denial of the possession of the complainant, and of the possession of its predecessors or privies in estate, is direcly responsive to the allegations of the bill, and is in denial of all the right and title to relief vouched by the complainant. It is

more than a denial of the right and title of the complainant; it is the assertion of right and title in the defendant corporation, rendering strictly lawful its entry upon, and its possession and appropriation of the lands. Though relief is granted more readily to a land-owner, whose lands are entered upon by a corporation having compulsory powers to take them for its own uses, and upon a different principle, than in cases of trespass, waste or nuisances, yet, as in such cases, if the right and title of the party complaining are not clear, or if the whole controversy resolves itself into a naked dispute as to the strength of the legal title, and it be not shown that an action of trespass, or of ejectment will not afford all necessary relief, the court will not intervene by injunction.—1 High on Inj. § 629; *Boulo v. N., M. & T. R. R. Co.*, 55 Ala. 480. The necessity which induces the intervention of the court springs from the duty of the corporation not to enter upon, and dispossess the true owner, without his consent, or without the course of judicial proceedings, which the statute prescribes, and the payment of just compensation, as demanded by the Constitution. The court will not intervene to quiet titles, or to decide controversies as to the title. There are other and more appropriate remedies and tribunals for the determination of all such controversies. Taking the averments of the answer as true, and, upon this motion, so far as responsive, they must be deemed true, the case does not fall within the principle upon which the court has proceeded in cases of this character. There has been no invasion of the possession or property of the complainant, and the true owners, having possession, to whom only the defendant corporation owed duty, have not been dispossessed without their consent. The observation of the Vice Chancellor, in *Webster v. S. L. R. Co.*, 1 Simons (N. S.), 277 (40 Eng. Ch.), that when the corporation has treated with one in possession, claiming to be the owner, and acquired the right to enter upon, and possess the lands, the court should not interfere, and *brevi manu* arrest its operations at the instance of a third person, of whose claim and title the corporation had not notice, has a direct application to the case. If, in such a case, the court interferred, there is much of reason to apprehend that often it would do as great injury, as that which it is solicitous to avert. A temporary injunction could and would not infrequently be sought for the purpose of pressing the corporation into a compromise, or into terms with parties, who, it could show eventually, were without a right to relief, to whom no wrong had been done.

The general rule is well settled, that if a verified answer fully and unequivocally denies the material allegations upon which the equities of the bill depend, a temporary injunction

will be dissolved. The rule is of more inflexible application to bills enjoining proceedings in courts of common law, than to special injunctions for the prevention of the invasion of property, or of irreparable injury. In cases of special injunctions, though the answer may be in direct negation of the equity of the bill, the court exercises a sound judicial discretion, and will retain the injunction, if it be clear that greater injury will result to the complainant from its dissolution, than will result to the defendant from its continuance to the final hearing. *Bibb v. Shackelford*, 38 Ala. 611; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; 2 High on Inj. §§ 1508 *et seq.* Upon this point there does not seem to us any real difficulty in the case. The right of the defendant corporation to take the lands, if necessary to the construction of its railway, by appropriate judicial proceedings, upon making just compensation, if they prove eventually to be the property of the defendant corporation, can not be doubted. The property and franchises of a corporation may be taken for public uses, equally with the property of the citizen.—*A. & F. R. R. Co. v. Kenney*, 39 Ala. 307. And now the Constitution forbids the abridgment in this respect of the right of eminent domain. The grievance or injury which the complainant may suffer from a dissolution of the injunction is temporary, if eventually it proves to be the owner of the lands; there is only delay in making just compensation. But if the injunction be continued, the defendant corporation hindered and delayed in the construction of its railway, adequate pecuniary compensation in damages is not practicable; and the public, having an interest in the construction of the railway, will be subjected to inconvenience. Weighing, then, all considerations which it is proper to indulge in determining whether the injunction shall be dissolved, or shall be continued, the preponderance favors a dissolution; there is less of injury and inconvenience to the parties, than would result from its continuance. There is no question of the ability of the defendant corporation to make just compensation to the complainant, and the only possible injury which can result to the complainant is delay in receiving the compensation.

The decree of the chancellor must be reversed, a decree here rendered dissolving the injunction, and the cause remanded.