# Harrison *v.* Yerby.

*Bill in Equity by Purchaser, for Injunction against Sale under Unrecorded Mortgage.*

1. *Dissolution of injunction on answer.*—On motion to dissolve an injunction, even when the answer contains a full and complete denial of the material allegations of the bill, the court is invested with a wide latitude of discretion, in the exercise of which it will consider and balance the probable resulting damages to the respective parties; and if it appears that irreparable mischief may result from a dissolution, or that greater injury may thereby result to the complainant than to the defendant from continuing the writ in force, a special injunction will be retained until final hearing.

2. *Same; case at bar.*—When the bill prays an injunction against a sale under a mortgage, the complainant having purchased from the mortgagee, as agent of the mortgagor (to whom he had previously sold and conveyed), and alleging that the defendant fraudulently concealed from him the existence of the mortgage, which was then unrecorded; the injunction may properly be retained, notwithstanding the denials of fraud in the answer, when it appears that the mortgagor and vendor is a non-resident, and that he has transferred one of the complainant's notes for the purchase-money, to an assignee, who is asserting a prior lien on the land.

APPEAL from the Chancery Court of Tuskaloosa.
Heard before the Hon. THOMAS COBBS.
The bill in this case was filed on the 9th November, 1888, by J. Stephen Yerby, against J. C. Harrison, Geo. F. Lupton, and J. O. Prude; and sought (1) to enjoin a threatened sale, under a power in a mortgage, of certain lots of land, which the complainant had bought from said Harrison, who was the agent of said Lupton; (2) to have the mortgage cancelled, as to the lots, as a deed on the complainant's title; and (3) to enjoin said Prude from enforcing the collection of a note given for a part of the purchase-money, which he claimed was a prior lien on the lots.· The said lots were part of a tract or parcel of land adjoining the city of Tuskaloosa, which was sold and conveyed by said Harrison and wife to Lupton, on the 16th April, 1887, at the price of $4,000; and at the same time Lupton executed to Harrison a mortgage on the property, to secure the payment of two

notes, each for $1,333.33, given for the deferred payments; one of said notes falling due April 16th, 1888, and the other October 16th. This mortgage was filed for record in the office of the probate judge, as shown by his certificate, on the 7th July, 1887; but it was not proved by the attesting witness, and was not acknowledged by the grantor until the 11th July, 1887. Immediately after the purchase of the land, Lupton had it divided into lots, and left the property in the hands of said Harrison, or J. C. Harrison & Co., real estate agents in Tuskaloosa, for sale. On April 21st, 1887, complainant (Yerby) bought two of said lots from Harrison, as agent for Lupton, for the aggregate price of $1,950, paying $650 cash, and giving his two notes for $650 each, payable twelve and eighteen months after date; and on August 6th afterwards he bought a third lot, at the price of $700, of which $500 was paid in cash, and a note for $200 given for the residue. On each of these sales, a bond for titles was executed by said Lupton, conditioned in the usual form. The first note for $650, which fell due on the 21st April, 1888, was discounted before maturity, and paid by complainant on the 7th May, 1887; and the note for $200 was paid at maturity, April 10th, 1888. The second note for $650, which fell due on the 16th October, 1888, was transferred by Lupton to J. O. Prude, as collateral security for an existing debt; and said Prude asserted it as a prior lien on the two lots first sold to complainant, when, as the bill alleged, said Harrison advertised them for sale under his mortgage from Lupton.

The bill alleged that all these transactions occurred between the complainant and said J. C. Harrison, acting as the agent of Lupton, and sought equitable relief against the mortgage and threatened sale on these grounds: (*Par.* 11.) "During all these transactions, said Harrison kept your orator in ignorance of the fact that he held said mortgage on said property, or any adverse claim thereto, but, on the contrary, represented the title as good, and repeatedly told your orator that a good and perfect title could and would be delivered as soon as all the purchase-money was paid; and said Harrison never in any way so much as intimated that he held a mortgage on said property, but fraudulently misled your orator, and procured him to purchase said property, and to receive said bond for title therefor, and also fraudulently and designedly procured your orator to take up and satisfy said note before maturity; the said Harrison having never

[Harrison v. Yerby.]

filed his said mortgage, nor so much as procured an acknowledgment thereof before an officer." And the complainant declared his readiness, willingness and ability to pay the unpaid note for $650, with interest, so soon as he could obtain from Lupton a good and sufficient conveyance, as required by the terms of his bond for title.

In response to these allegations of the bill, the answer of Harrison contained the following averments: "In answer to the 11th part of the 1st paragraph of said bill of complaint, extending from line 21, page 9, to line 3, of page 11, respondent denies the same wholly and entirely, as being untrue in each and every statement thereof. He denies that, during the said transactions, he kept complainant in ignorance of the fact that he held the said Lupton mortgage upon said premises. He denies that he told complainant a good and perfect deed could and would be delivered to him so soon as all of the purchase-money should be paid to said Lupton; and asserts that he did say to complainant that a good and sufficient deed could be made by said Lupton to complainant, so soon as all of the purchase-money due on respondent's mortgage should be paid to him by said Lupton. He denies that he fraudulently misled and procured complainant to purchase said property, and to receive therefor said bond for title; and denies that he fraudulently procured complainant to take up and satisfy said note before it became due; and he denies that his said mortgage was not filed within the time prescribed by law." And a subsequent paragraph of his answer contained these averments: "Respondent believes and asserts that, during the entire time of the negotiation for the purchase of said property, complainant was fully aware that said Lupton had bought said property from him, and that a part of the purchase price was not paid, and that respondent held a mortgage on said property to secure the payment of the same. But, if there could be any possible doubt about complainant being informed of the existence of said mortgage during the negotiations, it was ended and set at rest when the parties met in the office of said J. C. Harrison & Co. for the purpose of completing said sale; at which time the question came up, as to what kind of instrument said Lupton should execute to complainant; and it was stated that he would give him a bond for title, conditioned to make title upon payment of the amount due. Complainant then inquired if he could not have a deed for the property, and respondent stated to him that, on account of

[Harrison v. Yerby.]

Lupton having paid only a part of the purchase-money for the property, and having given this respondent a mortgage on the property for the unpaid price, which mortgage was then unsatisfied, said Lupton could not then make a deed, but could do so when he had satisfied said mortgage, so far as respondent was concerned. And respondent avers, that this entire matter, as to the kind of transfer and said unsatisfied mortgage, was fully discussed, talked of, and understood by all present; and that there was no concealment or misrepresentation used by this respondent, or any other person, towards complainant, but that said sale was open, fair and square, and everything connected with the title of said property was open to complainant's examination, and that he fully knew of the existence of said mortgage to respondent."

An answer was also filed by Lupton, and an answer and cross-bill by Prude; but these require no notice. After answers filed, a motion was submitted by Harrison, to dissolve the injunction on the denials of his answer; which motion being overruled and refused by the chancellor, his decree is here assigned as error by said Harrison.

WOOD & WOOD, for appellant.—The bill seeks to set up an equitable estoppel against the legal title to land, but its allegations are scarcely sufficient.—Bigelow on Estoppel, 4th ed., 679; 2 Herman on Estoppel, § 966; *Turnipseed v. Hudson*, 50 Miss. 249; 7 Amer. & Eng. Encycl. Law, 12; 2 Pom. Equity, § 806; 3 Washb. Real Property, 88; 80 Ala. 354. Admitting the sufficiency of the bill, its material allegations are denied fully, explicitly, and with particularity; and the injunction ought to have been dissolved on the denials of the answer.—*Weems v. Weems*, 73 Ala. 464; *Bishop v. Wood*, 59 Ala. 253; *Jackson v. Jackson*, 84 Ala. 344; *Satterfield v. John*, 33 Ala. 132; High on Injunctions, 2d vol., §§ 1472, 1505; *Collier v. Falk*, 61 Ala. 105; *Garrett v. Lynch*, 44 Ala. 683; *Dunlap v. Clements*, 7 Ala. 539; 67 N. C. 422. The insolvency of the defendants is not averred in the bill, nor any other facts stated from which an inference of irreparable damage may be drawn.

COCHRANE & FITTS, *contra.*—There is no inflexible rule, which requires the dissolution of an injunction on the denials of the answer. On the contrary, it is a matter of sound judicial discretion, to be exercised on a consideration of all the facts and circumstances of the particular case; and this

[Harrison v. Yerby.]

discretion has a wider range where fraud is charged, and where irreparable injury may result from a dissolution. Another principle requires the court to weigh the relative benefit or injury which may result to the respective parties; and the appellate court will not disturb the ruling of the chancellor, unless the record shows an abuse of his discretion. An application of these principles to the facts of this case justifies the decision of the chancellor.—High on Injunctions, §§ 508–14, 900, 905, 1467, 1543; *Collier v. Falk*, 61 Ala. 105; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Bibb v. Shackelford*, 38 Ala. 611; *E. & W. Ala. R. R. v. E. T., Va. & Ga. R. R.*, 75 Ala. 275; *Miller v. Bates*, 35 Ala. 580; *Rembert v. Brown*, 17 Ala. 667; *Walker v. Tyson*, 52 Ala. 593.

SOMERVILLE, J.—The motion made before the chancellor was to dissolve the injunction, on the denial of the facts constituting the equity of the bill, as contained in the answer of the respondent. This motion was overruled, and from this ruling the present appeal was taken.

The denials contained in the answer are not so full and complete as we might desire. But, considering that they are sufficiently so, the rule is not imperative, that the injunction shall in all such cases be dissolved, The court is invested with a wide latitude of discretion in acting on such cases. It will especially weigh the relative degree of injury or benefit to the parties which may ensue from the maintenance of the injunction on the one hand, or its dissolution on the other; and if the continuance of the writ will probably cause less injustice and inconvenience to the defendant, than its dissolution will to the complainant, the court, upon balancing the question of relative damage, always feels at liberty to exercise its discretion in furtherance of justice, by maintaining the injunction; especially where the discretion of the lower court, which is entitled to great respect, has been apparently exercised without abuse. Where irreparable mischief to the complainant will be likely to follow from a dissolution, the appellate court always feels authorized to allow a special injunction to remain in force, until a final hearing can be had on the merits.—*Bibb v. Shackelford*, 38 Ala. 611; *East & West R. R. Co. v. East Tenn., &c. R. R. Co.*, 75 Ala. 275; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Collier v. Falk*, 61 Ala. 105; *Columbus & West. R. R. Co. v. Witherow*, 82 Ala. 190; 2 High on Inj., § 150 *et seq*;

[Aycock v. Adler.]

*Doughty v. S. & E. R. R. Co.,* 51 Amer. Dec. 267; *Mc-Brayer v Hardin,* 53 Amer. Dec. 389.

There is no question as to the equity of the bill. If the facts alleged in it are satisfactorily proved, the complainant is unquestionably entitled to a perpetual injunction of the mortgage sale of the land. The defendant, Lupton, the vendor of the land, is a non-resident of the State. He has transferred the last note due for the purchase-money to the defendant Prude, who himself claims priority of lien on the premises. It is important to the complainant to have settled the relative priority of this lien and that of the mortgage executed by Lupton to the defendant Harrison. Without such adjustment, much embarrassment and consequent loss will probably ensue to complainant, which may prove irreparable. The defendants, on the contrary, can suffer no very great inconvenience by keeping the injunction in force, being fully protected against loss by the injunction bond.

The decree of the chancellor keeping the injunction in force is free from error, and is affirmed,

